## T. L. STEVENS v. THE STATE.

No. 15375. Delivered May 25, 1932.
Reported in 50 S. W. (2d) 284.

The opinion states the case.

*F. J. Ford,* of Decatur, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is rape; penalty assessed at confinement in the penitentiary for five years.

The prosecutrix, Bessie Beatrice Huckabee, a girl between 12 and 13 years of age, testified that at the time of the commission of the alleged offense, she had been acquainted with the appellant for about a year; that Sam Wheelis came to the home of the prosecutrix, and that she and her older sister accompanied him to a filling station, where all of the parties mentioned got in the appellant's car and drove out on a certain road and stopped near what was described as an old house. At that point they all got out of the car. Wheelis and the older sister went into the house, while the prosecutrix and Stevens got back in the car. From the testimony of the prosecutrix we quote as follows:

"I had intercourse with Stevens. * * * The car was an old Buick roadster. It had one seat in it. We had intercourse there in the car. His private parts entered mine. * * * I was sitting up in the car seat when he had intercourse with me, with my feet on the floor of the car. I was sitting up, sitting straight up, in the seat and not leaning back, with my feet flat on the floor. * * * I never got my feet off the floor while he was having intercourse with me. Nobody had had intercourse with me before that. My underclothes were not bloody. He penetrated me fully. He put his private parts into mine. I might have hollered, but I didn't scream. I had no bloodstains on my underclothes.

"After that I went on back home with my sister, Ila May, Wheelis and Stevens. We were all laughing and talking and having a good time together. I did not tell my sister I had been ravished. * * * I went back home to my father's and mother's laughing and talking and having a good time. I didn't tell any of them about it."

The prosecutrix made no disclosure of the occurrence until she was brought before the grand jury some two months later. When brought before the grand jury she at first denied that the appellant had had intercourse with her. She was examined by Dr. Petty under the direction of the grand jury and the prosecuting attorney, after which she told the grand jury that Stevens had had intercourse with her.

There was testimony that the prosecutrix had given contradictory statements as to where the occurrence took place; that is, whether in the house or in the car. Her sister, Ila May Huckabee, testified that they went to the old house as stated by the prosecutrix, and that the witness and Wheelis went in the house; that when they came out the prosecutrix and the appellant were sitting in the automobile. The witness declared that she knew nothing of what took place during her absence. Ila May also testified that on the way home the prosecutrix was crying. The witness also said that the prosecutrix did not tell her of the occurrence until after her examination by a doctor.

Dr. Petty testified that he could not say that he knew the prosecutrix,

although he said he had examined the two Huckabee girls about the first of June; that he had examined them at the request of the county attorney while the grand jury was in session. He made an examination of their female organs and observed the condition of them. He found that the hymen had been ruptured. He said that such a rupture could be caused by anything that was larger than the cavity which was being protected by it; that intercourse would rupture the hymen. He said further that in young girls masturbation could rupture the hymen, or any blunt instrument would rupture it, not necessarily the privates of a man; that it would depend upon whether the first act of intercourse left evidence of blood or bloodstains; that occasionally the hymen has to be ruptured before menstruation; that a girls 12 years old having intercourse with a man would likely rupture the hymen and show some blood. The doctor said that the hymen of the prosecutrix had been ruptured; that a rupture is usually followed by a flow of blood in varying amounts. Answering a hypothetical question, the doctor said he thought the girl bled, but it was not always accompanied by a profuse flow of blood.

Wheelis testified that he was with the Huckabee girls and Stevens in the latter's one-seated Buick car; that in front of the seat there was an emergency brake and a lever for the starter; that there was a reverse lever in the front part and a dash-board up over that. He said that with a person sitting out in the front of the seat with the feet on the floor of the car, there would not be much room between the knees and the dash-board; that there would be about six inches of space from the knees to the front part of the car. The witness said that he went after the older Huckabee girl, and that the younger one insisted in going along; that there was no previous arrangement to that effect. They drove out on the road to an old house and came back; that when they stopped at the house, he and the older Huckabee girl went in the house and came back to the car; that when they returned the prosecutrix and Stevens were sitting in the car; that she was not crying and did not do so at any time while they were together. She said nothing about Stevens having had intercourse with her. She was laughing and talking and was in a jovial mood. He did not know what happened in the car after he had left it.

The appellant, a man 35 years of age, testified that when he went to the Huckabee home, he had no idea that the younger girl was going with them; that she was insisting upon going along. He denied having had intercourse with her at any time. He said that they started to a party and had a flat tire; that, while Wheelis and the older girl were gone into the old house, the appellant and the prosecutrix sat in the car.

Touching the manner in which the act of intercourse took place, the testimony of the prosecutrix is incredible. Assuming that she was a virgin as she claims to have been, her testimony, as well as that of the doctor who examined her, throws great doubt upon the truth of her testimony.

That a man thirty-five years of age could have had intercourse with her to the extent described by the prosecutrix when she said, "he penetrated me fully" and rupturing the hymen as described by the doctor and producing no flow of blood may be possible, but it is far from probable, as tested by the evidence in the case and by human experience. The suppression of the alleged rape until she admitted it under the circumstances described in her testimony, some two months after the occurrence and after she had been examined by a doctor, adds nothing to the weight of her testimony. To sustain a conviction of one charged with rape of a girl under the age of consent, corroboration is not essential, but, upon facts like the present, the absence of corroboration touching the criminal act is a ·circumstance that cannot, in justice to the accused who denies the offense, be overlooked. Upon the facts in evidence, the language of this court in Gazley v. State, 17 Texas App., 277, is pertinent: "And there may be a conviction for this offense even upon the uncorroborated testimony of the injured female, although she be a child under the age of ten years. (2 Bish. Cr. Law, sec. 968; 1 Russ. on Crimes, 9th Ed., 931). But all the authorities agree, and especially in a case where the injured female is a young child, that this is a crime requiring special scrutiny by the jury, and a careful weighing of the evidence, with all remote and near circumstances and probabilities, in cases where the testimony of the injured female is unconfirmed by other witnesses. And it has been well said that 'it should be the care of the prosecuting officer, in every case of this sort, to seek carefully for circumstantial evidence tending to confirm the main witness.' "

In the same case, on page 279, of 17 Texas App., the same judge said further: "Again: a rape upon a child of such tender years, by an adult man, it is reasonable to suppose would have left indications of the violence, upon her underclothing. There would certainly have been some flow of blood had penetration taken place, and yet there is no proof of such indications, and no attempt even to furnish such proof."

It would be interesting to note other declarations in the opinion but lack of space renders it impracticable. Suffice it to say that a perusal of the opinion reversing the conviction because of the insufficiency of the evidence would demonstrate its analogy to the case in hand. Gazley's case, supra, has been cited with approval, and the recitals therein have been relied upon and reaffirmed in many subsequent appeals. See Montresser v. State, 19 Texas App., 281; Price v. State, 36 Texas Crim. Rep., 143, 35 S. W., 988; Venable v. State, 84 Texas Crim. Rep., 354, 207 S. W., 520.

In the opinion of the writer, the facts upon which this appeal is based call for a conclusion such as that stated on closely similar facts in the opinion of this court in the case of Green v. State, 97 Texas Crim. Rep., 53, 260 S. W., 195, 196, in the following language: "Under Article

939, C. C. P. (now article 848, C. C. P., 1925), this court may reverse a judgment upon the facts; we hesitate to interfere with the verdict of the jury in any case, but it is our duty to do so when there is not sufficient testimony to support it. * * * Though the verdict should not be lightly annulled it is our duty to set it aside and order another trial when the evidence viewed in its strongest light from the standpoint of the state, fails to make guilt reasonably certain. * * * We cannot in good conscience permit the judgment of conviction to stand, and the same is reversed and the cause remanded for another trial."

Because of the reasons stated above, the judgment is reversed and the cause remanded.

*Reversed and remanded.*