## LESS DODSON v. THE STATE.

No. 17495. Delivered April 10, 1935.
Rehearing Denied June 28, 1935.

The opinion states the case.

*Vickers, Campbell & Evans,* of Lubbock, for appellant.

*Meade F. Griffin* of Plainview, and *Lloyd W. Davidson,* State's Atty., of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is rape; penalty assessed at confinement in the penitentiary for fifteen years.

Mrs. Ray Griffith, mother of the prosecutrix, Hattie Ray Griffith, had an entertainment. Appellant and his family lived nearby and were at the Griffith home. Mrs. Griffith sent appellant to his home for a dipper. According to Hattie Ray Griffith, a little girl between eleven and twelve years of age, she met appellant while playing and accompanied him to his home on the occasion mentioned. Her testimony touching what occurred is as follows: "And he got the dipper and put it on the table, and then he started playing with me, and he put hand in my bloomers and played with me awhile, and then he took his thing out and put it in me, and I would jerk his hand away, and kinda push it back, and he would start to do it again, and I would keep pushing it back, and finally he kept on doing that, and finally he got up and got the dipper, and I went on home, and he came on home. When he was trying to put his thing in me *I was sitting on the bed.* * * * He didn't have my bloomers off; he just had them down. As to what I was doing to him when he was trying to put his thing in me, I state that *I was just sitting on the bed,* and *I would just jerk his arm back, and he would put it back.* He would keep putting it back. He got his private part in my private part."

On cross-examination the prosecutrix testified in part as follows: "The first thing he did was to get the dipper, and it was after he got the dipper that this other happened. *Yes, sir, I had on my bloomers, and I never did pull them off; I kept them on. I also had on a dress, and I kept my dress on. I didn't pull my bloomers down; the defendant pulled my bloomers down.* He was on the bed first, and he was just playing with me and kinda threw me on the bed. After that happened I went on back to my house."

On redirect examination the witness testified: "The house where this took place was a two-room house. *This occurrence took place on a bed.* There is a bed in the room where he put the dipper on the table."

According to Mrs. Griffith, she learned from her daughter of the occurrence on the 15th of September, which was four days after the alleged date of the offense. She had her daughter examined by Dr. Key, a physician of Lubbock, Texas, who was recommended to her by other doctors.

The testimony of Dr. Olin Key is as follows: "On or about the 15th of September, I was connected with that institution (Lubbock Sanitarium). I met Mrs. Ray Griffith * * * and

Hattie Ray Griffith on that date. * * * I made an examination of her (daughter) but did not find any evidence of bruises or anything over the body, and then I examined her female organs for evidence of rape. As to whether I found any evidence of rape; I state that she had not been penetrated; that is, the only thing we found that was abnormal at all was some redness in the lower part of the vagina, which she said was tender. As to the condition of her hymen, I state that I found that it was intact. * * * I made the examination with my gloved finger. * * * There could have been a penetration down to the hymen. * * * As to what the folds of skin are called, I state they are called the libia. * * * They are between the surface of the female organ and the hymen, that is, they are on the exterior surface before you get to the hymen. They form a sort of an enclosure, more or less like a flap. They are sort of lips to the female organs. Generally, that is a quarter to one-half inch deep before you strike the hymen. There was a redness or tenderness in the lower part of the vagina, that is, * * * between the lower part of the vagina and the rectum, * * * and the redness was somewhere in this region here which she said was tender."

On cross-examination the doctor testified: "The hymen is very near the surface. The hymen was intact. Any entrance of any kind into the vagina, whether a finger or anything, would produce a rupture of the hymen, if it was larger than the opening. I found no evidence whatever of a rupture of the hymen. In other words, the hymen was intact. * * * I used my left finger, like this, (demonstrating) and I was able to insert it about this far (indicating). I would say about a quarter of an inch or between a quarter or an inch and a half an inch, maybe. This little redness that I noticed, as to whether it was very slight irritation, I state that it was just a redness of the skin. Not even an irritation, but just a little redness of the skin. This redness was on the libia where it blends into the surrounding tissue. We were not able to discover any evidence of bleeding. * * * *It is my opinion that she had never been penetrated by any male organ.*"

On redirect examination the witness testified: "What I mean by penetration is that the hymen was not penetrated. There could have been a penetration down to the .hymen, but I wouldn't have been able to determine it. The redness was inside the folds of the libia."

On recross examination the doctor testified: "That redness was at a place that could have been caused by straddling a

bicycle or climbing a fence; I think that could have been possible."

Betty McAdams, a little girl, who was a playmate of the prosecutrix, testified that she was told by the prosecutrix of the occurrence on September 11th, and that the witness told the prosecutrix to tell her mother.

Appellant testified and controverted the testimony of the prosecutrix. He stated that on the date of the alleged offense the prosecutrix was not in his home; that he made no attempt of any kind towards having relations with her. The prosecutrix' version of the affair was categorically denied by the appellant in his testimony.

The following citation of cases throw some light upon the decisions of this court touching the facts similar to those appearing in the present appeal: Montresser v. State, 19 Texas App., 281; Gazley v. State, 17 Texas App., 267; Draper v. State, 57 S. W., 655; Kinnon v. State, 42 S. W., 376; Wallace v. State, 89 S. W., 827.

The controlling question is whether the evidence is sufficient to support the verdict. It is essential that there shall be "carnal knowledge" of the female, that is, sexual intercourse with her. There must be actual contact of the sexual organs and penetration, however slight. In the present, as in other cases of the same nature, the facts must control. That is to say, there must be sufficient evidence to justify the finding of the jury that there was carnal knowledge.

We have quoted above such of the testimony as is deemed necessary to the disposition of the case.

There are various collateral circumstances depending upon conflicting testimony, the discussion of which is pretermitted for the reason that they are remote, conflicting and unnecessary to the decision of the case.

The testimony of the prosecutrix and the doctor seem convincing that there may have been some manner of assault, but not amounting to carnal knowledge. The testimony of the doctor, as understood, is to the effect that his examination of the prosecutrix resulted in the discovery of no symptom or fact which would lead to the conclusion that there had been *penetration*. The only matter discovered by the doctor, which was in the least degree abnormal, was a slight redness at a place upon the person of the prosecutrix which might imply that there had been some slightly irritating contact. This was not in that part of her body which would disclose penetration, but which might have resulted from many other causes. While the

doctor testified that he found nothing indicating penetration, he admitted that there might have been some slight contact which produced no effect so as to enable its discovery. The testimony of the little girl upon the subject of penetration is similar to that in other cases which the court has found it necessary to reverse for want of proof of the commission of the offense. The position in which the prosecutrix placed herself in her testimony, that is, *sitting on the bed,* is analagous to the remarks of Judge Hawkins in the case of Green v. State, 97 Texas Crim. Rep., 52, in which he said: "He (Green) didn't push me over, I was kneeling down with my knees on the floor and my hands on the bed and he kept on that way until he got what he wanted. I guess he completed his act; finished it."

This court commented in the following language: "When we read this most remarkable account of how, and the position in which, this alleged forcible act of intercourse took place we recall the words of Horatio, commenting on an incident he did not understand, 'But this is wondrous strange,' and Hamlet's reply, 'There are more things in heaven and earth, Horatio, than are dreamt of in your philosophy.' One test for determining the truth, or otherwise, of evidence, is, does it comport with human experience generally regarding the matter under investigation?"

See, also, Galaviz v. State, 82 Texas Crim. Rep., 377; Enfield v. State, 94 Texas Crim. Rep., 226; Sanders v. State, 75 S. W. (2d) 116.

On the record before us, as previously stated herein, we regard the evidence inadequate to support the verdict declaring appellant guilty of the offense of rape. Having reached such conclusion, we deem a discussion of the bills of exception unnecessary.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

## ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—We have carefully re-examined the statement of facts in the light of the State's motion for rehearing with the view of determining whether we were in error in holding the evidence insufficient to support the judgment of conviction. The testimony adduced upon the trial appears to have been accurately and fairly stated in the original opinion. Nowhere in the motion for rehearing is it suggested that we

omitted to set forth in the original opinion any material or salient fact which would have militated against our conclusion that the position in which prosecutrix placed herself made it impossible for appellant to penetrate her female organ. We quoted at length from the testimony of prosecutrix to show that she was occupying a position at the time of the alleged assault 'that would have rendered it impossible for the offense of rape to have been committed. We refer to the quotation of the testimony in the original opinion, as we deem it unnecessary to set it out again. In its last analysis, the testimony of prosecutrix fails to comport wth human experience. It follows that we are constrained to adhere to the conclusion that the evidence is not sufficient to support the conviction.

The motion for rehearing is overruled.

*Overruled.*