Affirmed and Memorandum Opinion
filed April 12, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00468-CR



Claude Hunter, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 263rd District Court

Harris County, Texas

Trial Court
Cause No. 1085775



 

MEMORANDUM OPINION 

Appellant Claude Hunter appeals his conviction for
the felony offense of aggravated sexual assault of a child.  After the jury
found him guilty, the trial court assessed punishment at incarceration in the
Institutional Division of the Texas Department of Criminal Justice for
thirty-five years.  In one issue, appellant claims the evidence was legally and
factually insufficient to support his conviction.  We affirm.

Background

J.E. was born in 1991.  When J.E. was a child (before
the age of fourteen), she lived with her paternal grandmother during the week
and would visit her mother, father, or maternal grandmother on weekends.  When
J.E. was around the age of seven, her mother began a relationship with
appellant.  During the time when J.E. was between the ages of seven and twelve,
she visited appellant’s house because of that relationship.  On weekends, J.E.
would visit appellant’s house with her siblings, as well as appellant’s
children.[1]
 J.E. testified that, when appellant and her mother “were talking,” she visited
appellant’s home about two weekends a month.[2] 
Although she could not recall the address of appellant’s home, she was able to
name the street, describe the area of town where the house was located, and
draw a diagram of the inside of the house.

J.E. told the jury that when she was eight or nine
years old, she was at appellant’s home watching television, while the other children
played outside in the front yard.  Appellant and J.E. were the only people in
the house.  Appellant called J.E. into his bedroom, where he sat her on the bed
and closed the door.  Appellant laid J.E. back on the bed, pulled down her skort
and underpants, and then penetrated her vagina with his penis in a repeated
motion.  Appellant eventually stopped, but before he left the room he told J.E.
not to tell anyone, that it could happen again, and to act normal.  Appellant
further told her that, if anyone saw her exit the bedroom, she should say she
was using the bathroom or taking a nap.  J.E. stated that she was shocked and
in disbelief; she knew that what appellant did was wrong but did not feel she
could do anything.  J.E. then returned to the den and tried to act normal.  

J.E. did not immediately tell anyone about what
happened in appellant’s bedroom.  She explained that she felt like she could
get in trouble if she told, and she also did not want it to happen again.  Whenever
she saw appellant after the incident, she avoided being alone with him, or she
would stay at home.  

J.E.’s father told the jury that he and J.E. had a
close relationship and that they talked often while she was growing up.  J.E.’s
father noticed that J.E., around the age of ten or eleven, became more
distant.  During this time frame, J.E.’s grandmother (with whom J.E. lived)
prompted J.E.’s father to ask J.E. whether anyone had touched her or done
anything inappropriate.  J.E.’s grandmother, a school nurse, had noticed
changes in J.E.  J.E.’s father asked J.E. several times whether anyone had done
anything inappropriate.  Each time, J.E. became quiet and started crying, but
she would not say anything.  J.E.’s father believed something had happened to
her, but he could not confirm it at that time.  

When J.E. was fourteen years old, she began having
trouble at school.  Her father called her to question her about the trouble and
in that conversation J.E. told her father that appellant had sexually abused
her as a child.[3] 
J.E. explained that she felt, by that time, nothing could happen to her if she
told her father about the abuse.  The next day, J.E.’s father took J.E. to the
police station, where she filed a complaint.  The police officers took her
statement[4]
and referred J.E. to the Children’s Assessment Center for a forensic
interview.  The interviewer testified at trial that J.E. knew the difference
between the truth and a lie and was open and friendly during the interview. 
When discussing the alleged abuse, J.E. became tearful and would not look
directly at the interviewer.  It is common for children to become uncomfortable
when talking about an alleged abuse.  No medical examination was performed and
no DNA evidence was collected.

Appellant denied sexually abusing J.E.  Appellant
told the jury that J.E. had never been inside his home, and that an electrical
fire destroyed the home on December 15, 1999.[5] 
Appellant admitted that J.E.’s diagram of the inside of the home was “pretty
good,” but he believed she must have obtained the information from her mother. 
Appellant stated that he did not have any problems with J.E. and had never
disciplined her.  He did not know why J.E. alleged that he sexually abused her
when she was a child.  Appellant admitted that he had previously been convicted
of assaulting the mother of three of his children.

Sufficiency
of the Evidence

In his sole issue, appellant challenges the legal and
factual sufficiency of the evidence to support his conviction.  While this
appeal was pending, the Court of Criminal Appeals held that only one standard
should be used in criminal cases to evaluate the sufficiency of the evidence to
support findings that must be established beyond a reasonable doubt: legal
sufficiency.  Brooks v. State, 323 S.W.3d 893, 894-95 (Tex. Crim. App.
2010) (plurality op.); id. at 926 (Cochran, J., concurring). 
Accordingly, we review the sufficiency of the evidence in this case under a
rigorous and proper application of the legal sufficiency standard of Jackson
v. Virginia, 443 U.S. 307 (1970).  Brooks, 323 S.W.3d at 906; Pomier
v. State, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no
pet.).  

When reviewing the sufficiency of the evidence, we
view all of the evidence in the light most favorable to the verdict to
determine whether the fact finder was rationally justified in finding guilt
beyond a reasonable doubt.  Brooks, 323 S.W.3d at 899.  This court does
not sit as a thirteenth juror and may not substitute its judgment for that of
the fact finder by re-evaluating the weight and credibility of the evidence.  Id.
at 901–02; see also Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim.
App. 2007).  We defer to the fact finder’s resolution of conflicting evidence
unless the resolution is not rational.  Brooks, 323 S.W.3d at 902 n.19,
907.

A person commits aggravated sexual assault of a child
if he intentionally or knowingly causes the penetration of the anus or sexual
organ of a child by any means, and the victim is younger than fourteen years of
age.  Tex. Penal Code § 22.021(a)(1)(A)(i) & (2)(B) (Vernon Supp. 2010).  Aggravated
sexual assault is a first degree felony offense.  Id. at § 22.021(e).  A
child complainant’s testimony, standing alone, will support a conviction for
aggravated sexual assault.  See Jensen v. State, 66 S.W.3d 528, 534
(Tex. App.—Houston [14th Dist.] 2002, pet. ref’d); see also Tex. Code
Crim. Proc. art. 38.07 (conviction under Section 22.021 is supportable on the
complainant’s uncorroborated testimony).  “Further, there is no requirement
that the victim’s testimony be corroborated by medical or physical evidence.”  Newby
v. State, 252 S.W.3d 431, 437 (Tex. App.—Houston [14th Dist.] 2008, pet.
ref’d) (citing Garcia v. State, 563 S.W.2d 925, 298 (Tex. Crim. App.
1978)).

J.E.’s testimony provided evidence of each of the
elements of the felony offense.  J.E. testified that, when she was age eight or
nine, appellant caused his penis to penetrate her vagina in a repeated motion
for ten or fifteen minutes.  The testimony of J.E., standing alone, was
sufficient to support appellant’s conviction.  See Jensen, 66 S.W.3d at
534.  Further, J.E.’s father noticed J.E. become more distant around the age of
ten, and when he asked her whether anyone had touched her or done anything inappropriate,
J.E. would cry.  He felt something had happened to J.E., but he could not
confirm it at that time.  J.E. did ultimately tell her father about the sexual
abuse, though it was several years after the fact.  This outcry statement from
a child victim can be sufficient evidence to sustain a conviction for
aggravated sexual assault.  See Rodriguez v. State, 819 S.W.2d
871, 873 (Tex. Crim. App. 1991); Jensen, 66 S.W.3d at 534.  The
testimony provided by J.E. and her father, viewed in the light most favorable
to the verdict, was sufficient to support appellant’s conviction.

Appellant argues that the evidence is insufficient
because: (1) appellant denied sexually assaulting J.E., essentially making it a
“swearing match;” (2) the State failed to provide any physical evidence or DNA
link to appellant; (3) the State failed to provide any medical evidence from an
examination of J.E.’s body; (4) J.E. admitted that she did not tell a CPS
caseworker that appellant had sexually assaulted her when the caseworker was
investigating her mother; and (5) J.E.’s delayed outcry of five years “destroys
her credibility.”  We will address each of these contentions in turn.

First, appellant is correct that the jury was
presented with conflicting evidence with regard to the assault.  J.E. testified
that appellant committed the assault, and appellant denied doing so.  The jury
had to resolve this inconsistency.  The jury was presented with evidence that
J.E., who was eighteen at the time of trial, works at and attends Lone Star
College.  She is studying to be a teacher.  During high school, she participated
in choir and other extra-curricular activities, and was part of a part-time
work program.  In junior high, she received an academic award for good grades
and achievements in school.  At trial, she was able to draw a diagram of
appellant’s house and name all of appellant’s children.

The jury also heard that appellant earned
certificates from Houston Community College and had worked as an activity
director and as a cook.  Appellant admitted that while he was married, he lived
with a woman not his wife and had a relationship with J.E.’s mother.  He further
admitted that he had been convicted of felony assault on his girlfriend.  While
at first appellant said J.E.’s diagram looked nothing like his house, he later conceded
on cross-examination that her memory of his house was pretty good.  His
explanation for J.E.’s memory of his house and children was that her mother
must have given her the information.  The jury was in the best position to view
the witnesses, weigh all of the evidence, and decide whose testimony was
credible.  See Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App.
1999) (jury is the sole judge of the credibility of the witnesses and of the
strength of the evidence).  We must give due deference to the jury’s
determination.  See Brooks, 323 S.W.3d at 901-02; Newby, 252
S.W.3d at 437.  

Second, we find appellant’s argument regarding the
lack of physical or medical evidence unpersuasive.  There is no requirement
that the victim’s testimony be corroborated by medical or physical evidence.  See
Garcia, 563 S.W.2d at 928; Newby, 252 S.W.3d at 437.  Given the
amount of time that had passed between the assault and the outcry, physical
evidence was not realistic.  

Third, we disagree with appellant’s contention that
J.E. admitted that she did not tell a CPS caseworker that appellant had
sexually assaulted her when the caseworker was investigating her mother.  At
trial, J.E. stated that she recalled a CPS caseworker coming to her mother’s
home, and that she does not remember telling the caseworker about the assault
by appellant.  Importantly, J.E. also stated that she did not recall whether
the CPS visit occurred before or after the assault.  There was no other
evidence presented as to the date of the visit by the CPS worker.  Even if the
visit had occurred after the assault, however, a failure to tell the caseworker
would, again, be a factor for the jury to consider in weighing the evidence.

Fourth, we do not find appellant’s argument
persuasive with regard to J.E.’s delayed outcry.  It is true that J.E. waited several
years before she told anyone of the assault.  A delay in outcry, however, is
simply one factor for the jury to consider in making its determination.  J.E.
explained to the jury why she waited to say anything about the assault.  We
defer to the trier of fact’s determination of J.E.’s credibility and the weight
to be given her testimony in light of the delay in outcry.  See Brooks,
323 S.W.3d at 901-02; Fuentes, 991 S.W.2d at 271.

Appellant’s arguments rest on evidentiary weight and
credibility determinations that are reserved for the fact finder.  The jury was
entitled to resolve any inconsistencies and make credibility determinations in
the State’s favor.  Giving due deference to the jury’s weight and credibility
determinations, we find that on the evidence presented, a rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  Brooks, 323 S.W.3d at 899.  For the preceding reasons, we
overrule appellant’s sole issue.

Conclusion

Having overruled appellant’s sole issue, we affirm
the judgment.  

 








                                                                                    

                                                                        /s/        Martha
H. Jamison

                                                                                    Justice

 

 

 

Panel consists of Justices Brown, Boyce,
and Jamison.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
J.E. has four sisters and three brothers.  Appellant has six children with
women other than J.E.’s mother.  J.E. was able to provide names and ages of all
of the children who were at appellant’s house when she would visit.





[2]
Appellant stated that he and J.E.’s mother dated for nine months to a year, but
maintained contact after they stopped dating.





[3]
J.E. stated that she felt more comfortable talking to her father, rather than
her mother, about what happened because her father had a calmer disposition.





[4]
The intake officer told the jury that J.E., when giving her statement, was
visibly upset–sobbing and crying–while talking about what happened.





[5]
The indictment alleges that the sexual abuse occurred on or about July 2001. 
J.E. testified that the abuse occurred sometime before the fire.