**Opinion filed August 20, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00176-CR

_____

## DEREK JUSTIN PAREDES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR47592**

## M E M O R A N D U M   O P I N I O N

The jury found Appellant guilty of continuous sexual abuse of a child as charged in the indictment, and it assessed his punishment at confinement for thirty years. The trial court sentenced him accordingly. We affirm.

In his first issue on appeal, Appellant claims that the evidence was insufficient to support his conviction. In his second issue on appeal, Appellant contends that, because the evidence was insufficient to convict him, he suffered a violation of his

due process rights. In his third issue on appeal, Appellant maintains that certain evidence admitted by the trial court was unduly prejudicial and improper. In his fourth issue on appeal, Appellant asserts that the State made improper remarks during its closing argument in the guilt/innocence phase of the trial. In Appellant's fifth issue on appeal, he also asserts that the State made improper comments in the punishment phase of the trial.

The victim, E.Q., was fifteen years old at the time of trial. She testified that, when she was about seven or eight years old, her mother began a relationship with Appellant. Appellant moved in with E.Q.'s mother, E.Q., and E.Q.'s siblings.

E.Q. testified that, when Appellant "touched" her for the first time, she was eight years old. Appellant and E.Q. were watching television, and Appellant asked E.Q. to lie with him on the couch; she thought nothing of it, and she did. It was then that Appellant kissed her on the lips. E.Q. testified that it was just a "peck" but that she went to her room and cried. On more than one occasion, Appellant tried to kiss E.Q. again.

According to E.Q., Appellant began to treat her differently from the way he treated her sisters. For instance, he would not punish her for certain things, but Appellant would punish her sisters.

E.Q. testified that, when she was about ten years old, Appellant tried to touch her "middle spot" more than once and made her touch his "middle spot" more than twice. The record reflects that, when E.Q. referred to her "middle spot," she was referring to her vagina or genitals and that, when she referred to Appellant's "middle spot," she was referring to his penis or genitals. E.Q. told the jury that Appellant also grabbed her "boobs" when nobody was around. On one occasion, Appellant pulled down E.Q.'s shorts and licked her "middle part." E.Q. told Appellant to stop, and he did. When E.Q. was only ten years old, Appellant asked E.Q. if he could put his "middle spot" inside her. Before E.Q. could answer him, she felt "it" go inside

2

her; it hurt, and she moved away. E.Q. also told of a time that Appellant had tried to put his "middle part" "in [her] butt." After this incident, as she had after other incidents, E.Q. went to her room and cried.

It is this evidence that Appellant claims to be insufficient to support his conviction. Appellant contends that E.Q.'s testimony was not consistent with what she had told the police, her mother, and the Child Advocacy Center personnel. In his briefing in this court, Appellant maintains that it was apparent that E.Q. had lied about the allegations. Appellant also argues that the evidence is insufficient because a sexual assault nurse examiner had found no evidence of assault; that there was an abundance of untruthful, unreliable, inconsistent, and conflicting testimony; and that there was no objective evidence to confirm any part of E.Q.'s story.

At first, E.Q. told no one about the things that Appellant had done to her. Later, she told her sisters and her mother about Appellant's conduct, and her mother called the police. When the police arrived, E.Q. told a police officer about some of her allegations. Later, she also related the details to personnel with the Child Advocacy Center. Subsequently, E.Q. recanted her claims that Appellant had sexually abused her. E.Q. testified that Appellant had told her that, if she told anyone, "we would get tooken away from my mom."

After E.Q. had recanted, she told a cousin about the things that Appellant had done to her. She also told her mother again. In effect, E.Q. recanted her recantation.

Michael Margolis, a forensic interviewer with the Midland Rape Crisis and Children's Advocacy Center (CAC), testified that he interviewed E.Q. twice at the CAC, the first time in September 2014 and again in June 2015. In the first interview, E.Q. told Margolis that she had lied about Appellant touching her and that she just wanted to see her father because Appellant "was trying to make her do some cleaning." Margolis testified that E.Q. told him about the time when Appellant kissed her on the lips but told him "she didn't think it was a big deal."

3

However, in the second interview, E.Q. told Margolis about several instances when Appellant had sexually abused her. Margolis testified that he had worked with children who had recanted their outcries of abuse and stated that recantation is a possible stage of disclosure.

Donna Doyle, a sexual assault nurse examiner, examined E.Q. when E.Q. was twelve. Doyle observed no trauma.

E.Q.'s mother testified that, after Appellant moved in with them, she noticed changes in E.Q.'s behavior. She noticed that E.Q. became angry and distanced herself from her mother and her sisters. E.Q. testified as to how she felt after the various assaults. She felt "worthless," "dirty," "forced," "trapped," "scared," and "[h]opeless."

Sergeant Anthony Corson with the Midland Police Department testified that he interviewed Appellant. Appellant was not under arrest at the time. Sergeant Corson testified that Appellant denied E.Q.'s allegations but that his answers sounded rehearsed. After Sergeant Corson completed his initial report, he compiled and delivered the case to the district attorney's office.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When we conduct a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235

S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We defer to the factfinder's resolution of any conflicts in the evidence and presume that the factfinder resolved such conflicts in favor of the verdict. *Jackson*, 433 U.S. at 326; *Brooks*, 323 S.W.3d at 889; *Clayton*, 235 S.W.3d at 778.

A person commits the offense of continuous sexual abuse of a child if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" and, at the time of the commission of the sexual abuse, "the actor is 17 years of age or older and the victim is a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b) (West 2019). For purposes of the offense as alleged in this case, "acts of sexual abuse" refers to aggravated sexual assault of a child. *Id.* § 21.02(c)(4). As relevant here, a person commits aggravated sexual assault of a child when he "causes the penetration of the anus or sexual organ of a child by any means"; "causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor"; or "causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor." *Id.* § 22.021(a)(1)(B)(i), (iii), (iv).

Here, as we stated earlier, E.Q. testified that Appellant attempted to have sexual intercourse with her, vaginally and anally, more than once and that he made her touch his genitals "more than twice." E.Q. also testified that Appellant "started licking [her] middle spot." According to E.Q.'s testimony, the acts of sexual abuse began when E.Q. was eight years old and continued until she was at least ten years old.

Appellant claims in his brief that "it is apparent that E.Q. is not believable, because no science confirms a single detail. Since the medical expert cannot confirm anything, it seems that a fact finder, could not have found facts sufficient to convict defendant/appellant." However, as previously stated, we must defer to the jury's credibility determinations in challenges to the sufficiency of the evidence. *Brooks*, 323 S.W.3d at 889. Moreover, "[c]ourts give wide latitude to testimony given by child victims of sexual abuse." *Newby v. State*, 252 S.W.3d 431, 436 (Tex. App.— Houston [14th Dist.] 2008, pet. ref'd). And "there is no requirement that the victim's testimony be corroborated by medical or physical evidence." *Id.* at 437. The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West Supp. 2019); *Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd).

For all the above reasons, we hold that the evidence is sufficient to support Appellant's conviction for continuous sexual abuse of a child. We also hold, therefore, that, because the evidence is sufficient, Appellant's due process issue is not well-taken. We overrule Appellant's first and second issues on appeal.

In his third issue on appeal, Appellant argues that the trial court erred when it admitted evidence of an extraneous offense. In his fourth and fifth issues on appeal, Appellant complains that the State made improper remarks in its closing arguments. The State takes the position that Appellant has failed to preserve error on any of those issues. We agree.

To preserve an issue for appellate review, the record must show that a complaint was made to the trial court by an objection that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A). "Arguments which are not supported by a trial objection are deemed overruled." *Burks v. State*, 876 S.W.2d 877, 899 (Tex. Crim. App. 1994).

6

"An objection raised on appeal will not be considered if it varies from the objection made at trial." *Pyles v. State*, 755 S.W.2d 98, 116 (Tex. Crim. App. 1988).

Specifically, in his third issue on appeal, Appellant complains about testimony "from EQ indicating defendant/appellant touched her 'boobs'" and asserts that "the court allowed same despite proper and timely objection." In his brief, Appellant argues that that portion of E.Q.'s testimony was unfairly prejudicial and violated Rules 403 and 404 of the Texas Rules of Evidence. That is not the objection that Appellant made in the trial court. At trial, when E.Q. made the complained-of statement, Appellant's objection in the trial court was that the statement concerned an extraneous offense about which counsel did not receive notice in discovery. Appellant did not argue that the testimony was unduly prejudicial or violated the Texas Rules of Evidence. The objection presented to the trial court was based upon discovery complaints, not upon Rules 403 and 404. Arguments on appeal must comport with objections made at trial, or they are waived. TEX. R. APP. P. 33.1(a); *Dominguez v. State*, 474 S.W.3d 688, 699 (Tex. App.—Eastland 2013, no pet.). Because Appellant's objection at trial does not comport with the argument here, we overrule his third issue on appeal.

In his fourth issue on appeal, Appellant complains that it was improper for the State to comment during jury argument in the guilt/innocence phase of the trial that the jury should find Appellant guilty, "because he is," and that "there are kids out there . . . who may need your help." Appellant did not object to that portion of the argument. Therefore, Appellant has not preserved this issue for appellate review. *See Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004). We overrule Appellant's fourth issue on appeal.

Finally, in his fifth issue on appeal, Appellant argues that the State made improper statements in the punishment phase of the trial. Specifically, Appellant claims that the State made remarks that "exceeded parameters of acceptable

closing." However, the record reflects that Appellant did not object to the argument in the trial court. Thus, Appellant has not preserved this issue for appellate review. *See id.* We overrule Appellant's fifth issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


August 20, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.