Affirmed and Opinion filed June 23, 2009








Affirmed and Opinion filed June 23, 2009.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO.  14-07-00841-CR

____________

 

MARCUS JUSTIN KACZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 1452778

 



 

O P I N I O N

A jury convicted Marcus Justin Kacz of deadly conduct and
sentenced him to 180 days in the Harris County Jail; however, the trial court
suspended the sentence in favor of eighteen months probation and a $400.00
fine.  Kacz challenges his conviction and sentence contending that (1) the
evidence was factually insufficient to support the jury=s verdict; (2) the
trial court erred in excluding testimony about a witness=s statement
against his own penal interest; and (3) the trial court erred in denying Kacz=s request for a
mistrial after the State inquired about Kacz=s invocation of
his right to remain silent and his right to counsel.  We affirm.








Facts

This case involves a series of encounters on the night of
March 23, 2007, which culminated in a physical altercation and gunfire in an
apartment-complex parking lot.  Many facts about the events of that night are
in dispute.  What is clear is that the complainant, Cornelio Barrera, and his
brother, Esteban Barrera, along with their friends, Saturnino Sanchez and Jenny
Arantez, were driving to an apartment complex in Pasadena after drinking at a
cantina earlier that evening.  Esteban was driving Cornelio=s white Ford
Explorer.  While traveling along the East Sam Houston Tollway, Esteban passed
Kacz=s vehicle, which
began following him.  Kacz, an off-duty Pasadena police officer, was driving
his own unmarked pickup truck.

Several minutes later, Esteban exited the tollway and
stopped at a red light.  Kacz, who  had stopped behind Esteban, then got out of
his vehicle and approached the Explorer.  Esteban later testified that Kacz was
saying something as he approached, but Esteban could not hear him as the driver=s side window was
closed.  It is not disputed that Kacz was not in uniform, and instead was
wearing only a Polo shirt, jeans, and boots.  According to Esteban, Cornelio,
and Arantez, Kacz approached the Explorer with his handgun drawn.  Esteban
later testified that, fearing Kacz might shoot him, he ran the red light and
sped away.  








Kacz returned to his vehicle and followed Esteban to the
apartment complex where Cornelio was living at the time.  Upon reaching the
parking lot, Esteban parked the Explorer, exited the vehicle, and ran away. 
The other occupants also quickly exited the Explorer.  But while Arantez and
Sanchez ran away, Cornelio returned to the Explorer to get the keys.  By the
time Cornelio had retrieved the keys from the Explorer=s ignition, Kacz
had arrived, gotten out of his truck, and was again approaching with his weapon
drawn.  It is undisputed that Cornelio threw a bottle of beer at Kacz, and that
the two men wrestled on the ground for control of Kacz=s handgun. 
Ultimately, Cornelio got away from Kacz, returned to his Explorer, and quickly
drove off.  As Cornelio sped away, Kacz fired shots at the vehicle.  Cornelio,
Esteban, and their friends were then quickly apprehended by officers of the
Pasadena Police Department, responding to a call involving a police officer at
the apartment complex. 

For firing his handgun in Cornelio=s direction as he
drove away, Kacz was charged with one count of deadly conduct.  He was tried by
a jury and convicted.  The trial court imposed a sentence of 180 days in the
Harris County Jail, but suspended the sentence in favor of eighteen months
probation and a fine of $400.00.  This timely appeal followed.

Analysis

Kacz appeals his conviction contending that (1) the
evidence was factually insufficient to support the jury=s verdict; (2) the
trial court erred in excluding testimony about a witness=s statement
against his own penal interest; and (3) the trial court erred in denying Kacz=s request for a mistrial
after the State inquired about Kacz=s invocation of
his right to remain silent and his right to counsel. 

I.        Exclusion
of Testimony

Kacz contends that the trial court erred in excluding
testimony by Pasadena Police Detective Matt Breugger about statements Saturnino
Sanchez made on the night of the incident.  Specifically, Kacz sought to admit
testimony by Detective Breugger that Sanchez told him that the occupants of the
Explorer knew that the driver following them was a police officer.  According
to Kacz, this testimony would support his argument that his pursuit of Cornelio
was justified because he was knowingly evading a police officer.[1]


At trial, the State objected to the testimony, and the
following exchange occurred:

DEFENSE:            And
during that interview did he indicate to youC 








PROSECUTOR:      Object.  They are
trying to elicit hearsay testimony.  This witness has never been at this trial.

THE COURT:          Oh,
this witness hadn=t testified?

DEFENSE:            No, sir.  It=s a statement of disinterest [sic],[2]
Your honor.  It=s an exception to hearsay.

THE COURT:          Oh,
that=s sustained.

DEFENSE:            May
we approach, Your honor?

THE COURT:          Uh-huh.

(Conference at the bench)

DEFENSE:            This witness= statement is while they are
fleeing from this white car there=s a conversation.  And they indicate in the car that they
know it=s a cop, they believe it to be a
police officer, therefore, they are in the course of evading.  We will callCif need be we will call this
witness.  This witness is under subpoena; however, we have reason to believe he
isC 

THE COURT:          No,
I=m not allowing
that question.








When reviewing a trial court=s decision to
admit or exclude evidence, we apply the familiar abuse‑of‑discretion
standard.  Ramos v. State, 245 S.W.3d 410, 417B18 (Tex. Crim.
App. 2008).  A trial court does not abuse its discretion if its evidentiary
ruling was within the Azone of reasonable disagreement,@ and was correct
under any legal theory applicable to the case.  Winegarner v. State, 235
S.W.3d 787, 790 (Tex. Crim. App. 2007); Bargas v. State, 252 S.W.3d 876,
889 (Tex. App.CHouston [14th Dist.] 2008, no pet.).  Thus, because
the trial court is usually in the best position to decide whether evidence
should be admitted or excluded, we must uphold its ruling unless its
determination was so clearly wrong as to lie outside the zone within which
reasonable persons might disagree.  See Winegarner, 235 S.W.3d at 790; Hartis
v. State, 183 S.W.3d 793, 801B02 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).

On appeal, Kacz contends that the trial court should have
admitted the testimony as a statement against the declarant=s penal interest,
an exception to the hearsay rule.  See Tex. R. Evid. 803(24).[3] 
Kacz argues that Sanchez=s statement qualifies as against his penal
interest because he effectively admitted to evading arrest.  See Tex.
Penal Code Ann. ' 38.04(a) (Vernon 2003).  But the State
maintains that there is no evidence that Sanchez was himself evading a police
officer, as it was Esteban who was driving at the time.  The State also
contends that nothing about the statement shows that Kacz was attempting a
lawful arrest or detention.

In deciding whether a statement is admissible as a
statement against interest in criminal cases, courts employ a two-step
process.  See Bingham v. State, 987 S.W.2d 54, 57 (Tex. Crim. App.
1999).  First, the court determines whether the statement is truly against the
declarant=s interest.  Id.  Second, the court must
determine Aif there are corroborating circumstances that clearly
indicate the trustworthiness of the statement.@  Id.  If
both criteria are met, the statement is admissible.  Id. 








We begin with the question of whether Sanchez=s statement
exposed him to criminal liability.  See id.  For the exception to apply,
Sanchez=s statements must
be against his own penal interest.  See Guidry v. State, 9 S.W.3d 133,
149 (Tex. Crim. App. 1999).  While Sanchez=s admissions may
also implicate someone else=s interest, such as a third party or co‑actor,
unless the statement against that other person=s interest is also
sufficiently against his own interest, it cannot be considered reliable.  See
id.  A statement that incriminates another but not the declarant himself
does not merit an exception to the hearsay rule.  See id.

A person commits the offense of evading arrest or detention
if he intentionally flees from a person he knows is a peace officer attempting
lawfully to arrest or detain him.  Tex. Penal Code Ann. ' 38.04(a), (b)(1);
Hazkell v. State, 616 S.W.2d 204, 205 (Tex.  Crim. App. 1981).  Even if
we assume that Sanchez knew that Kacz was a police officer, culpability would
still require proof that Sanchez intended to flee from him, and that Kacz=s attempt to
arrest or detain Sanchez was, in fact, lawful.  Hazkell v. State, 616
S.W.2d at 205 .  

Sanchez told Detective Breugger that there had been a
conversation in the Explorer while Kacz was pursuing it in which the occupants
discussed their belief that Kacz was a police officer.  At that point, however,
Sanchez himself was not fleeing Kacz; he was merely a passenger.  See Miles
v. State, 918 S.W.2d 511, 515 (Tex. Crim. App. 1996) (holding that when
declarant was merely present during commission of offense, his statement does
not subject him to criminal liability and thus is not admissible under Rule
803(24)). 

But Kacz relies on Marron v. State, No.
01-02-00601-CR, 2003 WL 1938210 (Tex. App.CHouston [1st
Dist.] Apr. 24, 2003, no pet.) (mem. op., not designated for publication), to
show that even a mere passenger can be liable for the crime of evading arrest. 
In Marron, the defendant was the passenger in a stolen car pursued by
two marked police cars with sirens sounding and lights flashing.  Id. at
*3.  After the driver ran the stolen car into a ditch, Marron tried to leap
from the vehicle and flee on foot despite specific instructions from the
pursuing deputies to AStop, get on the ground.@ Id. at
*4.  The court of appeals noted that Marron Aignored their commands@ and Arefused to comply
with a lawful order, knowing that the order came from a police officer.@  Id.  This
evidence, the Marron court held, was sufficient to uphold his conviction
for evading detention.  Id. 








In this case, Sanchez fled on foot once the Explorer
reached the apartment complex.  Kacz argues that, like the passenger in the
stolen car in Marron, Sanchez became liable for evading arrest as soon
as he ran from the Explorer.  But while Cornelio admits that Kacz identified
himself as a police officer to him when he returned to the Explorer to retrieve
his keys, at that point, Sanchez was already gone from the scene.  Unlike the
passenger in Marron, Sanchez never received an order to stop from
someone he undoubtedly knew to be a police officer.  

Moreover, there is nothing in the evidence to establish
that Kacz had a lawful basis to arrest or detain anyone in the Explorer.  Kacz
makes several references on appeal to the amount of alcohol consumed by Esteban
and Cornelio on the night of the event, but that evidence was discovered only
after they were apprehendedCafter the incident at the apartment
complex.  Kacz did not testify that he suspected the Explorer=s driver was
intoxicated when he encountered the vehicle on the tollway; and he offered no
evidence that he believed any of the occupants were intoxicated before the
police had arrested them.  








The only reason Kacz gives for attempting to detain the
Explorer was that the driver had failed to stop and give information after an
accident, citing Transportation Code section 550.021(a).  But this section
expressly applies only to accidents involving personal injury or death, and
there was no evidence that any alleged collision on the tollway caused either. 
See Tex. Transp. Code Ann. _ 550.021 (Vernon 2008).  Kacz may
have intended to refer to section 550.022, which requires only damage to an
involved vehicle to trigger the duty to stop and give information.  See Tex.
Transp. Code Ann. _ 550.022 (Vernon 2008).  But although Pasadena Police
Sergeant Wesley Fojt testified that Kacz told him that Asomebody had hit
him@ while he was
driving on the tollway, Sergeant Fojt also testified that he did not see any Aobvious dents or
damage@ to Kacz=s truck.  Pasadena
Police Detective Terry Sulphin also testified that he examined and photographed
both the Explorer and Kacz=s truck, and observed no damage.  Based on
this evidence, the trial court could have concluded that there had been no
collision on the tollway at all, and thus no lawful basis for Kacz to arrest or
detain the Explorer=s occupants.  And absent a lawful basis,
Sanchez could not be culpable for evading arrest or detention.  See Smith v.
State, 739 S.W.2d 848, 851 (Tex. Crim. App. 1987).

The trial court did not abuse its discretion in excluding
Detective Breugger=s testimony because, based on the
evidence, its determination that Sanchez=s statement did not
qualify as a statement against his penal interest was within the zone of
reasonable disagreement.[4] 
See Winegarner, 235 S.W.3d at 790; Hartis, 183 S.W.3d at 801B02.  Kacz=s second issue is
overruled. 

II.       Factual
Sufficiency of the Evidence

Kacz also contends that the evidence presented at trial was
factually insufficient to support the jury=s verdict.  When
reviewing a factual‑sufficiency challenge, we view all the evidence in a
neutral light.  Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006); Newby v. State, 252 S.W.3d 431, 435 (Tex. App.CHouston [14th
Dist.] 2008, pet. ref=d).  We especially discuss and examine the
specific evidence that Kacz contends undermines the jury=s verdict. Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); Newby, 252
S.W.3d at 435.  We may set aside the verdict only if the evidence is so weak
that the verdict is clearly wrong and manifestly unjust, or if the verdict is
against the great weight and preponderance of the evidence.  Watson, 204
S.W.3d at 414B15; Newby, 252 S.W.3d at 435. We may disagree
with the jury=s conclusions; however, we must avoid substituting our
judgment for that of the jury, particularly in matters of credibility.  Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); Newby, 252
S.W.3d at 435. 

A.      AJustified under
the circumstances@








A person commits the offense of deadly conduct if he
knowingly discharges a firearm at or in the direction of one or more persons. 
Tex. Penal Code Ann. ' 22.05(b)(1) (Vernon 2003).  In this case,
it is undisputed that Kacz fired at least two shots at Cornelio as he drove
away in the Explorer.  There is no doubt that Kacz=s actions
fulfilled the requirements of the charged offense.

But Kacz argued at trial, and does so again on appeal, that
his actions were justified under the circumstances.  Specifically, he insists
that he was entitled to use deadly force against Cornelio because (1) Cornelio
had attempted Aunlawful deadly force@ against Kacz by
throwing a beer bottle at him, as well as attempting to grab Kacz=s handgun, and (2)
Cornelio=s actions created
a reasonable fear in Kacz that, if permitted to escape, Cornelio would likely
cause serious bodily injury to an unarmed civilian.  Kacz further argues that,
viewing Athe totality of
the evidence in a neutral light,@ the jury=s verdict refuting
these justifications is Aclearly wrong and manifestly unjust.@








  A police officer is justified in using force against
another when and to the degree the officer reasonably believes the force is
immediately necessary to make an arrest, or to prevent escape after arrest, if:
(1) the officer reasonably believes the arrest is lawful; and (2) before using
force, the officer manifests his purpose to arrest and identifies himself as a
police officer, unless he reasonably believes his purpose and identity are
already known by or cannot reasonably be made known to the person to be
arrested.  Tex. Penal Code Ann. ' 9.51(a) (Vernon
2003).  Additionally, a police officer is justified in using deadly force
against another when and to the degree the officer reasonably believes the
deadly force is immediately necessary to make an arrest, or to prevent escape
after arrest, when the requirements for the use of non-deadly force under
subsection (a) are met, and if: (1) the officer reasonably believes the conduct
for which arrest is authorized included the use or attempted use of deadly
force; or (2) the officer reasonably believes there is a substantial risk that
the person to be arrested will cause death or serious bodily injury to the
actor or another if the arrest is delayed.   Tex. Penal Code Ann. ' 9.51(c) (Vernon
2003).  The charge of the court included instructions based on these provisions
of the Penal Code, and Kacz=s only objection to them related to the
inclusion of the word Adeadly@ in relation to
the force used by Kacz.  The trial court overruled this objection, and Kacz
does not mention it in this appeal.[5]

Kacz contends the evidence demonstrates that his use of
deadly force was justified by Cornelio=s use of unlawful
deadly force.  Specifically, Kacz points to evidence that Cornelio threw a beer
bottle at him as he exited the Explorer in the parking lot, and later tried to
grab Kacz=s handgun as they wrestled on the ground.  But a
fundamental requirement of both section  9.51(a) and (c)[6]
is Kacz=s reasonable
belief that he is attempting a lawful arrest.  See Tex. Penal Code Ann. ' 9.51(a), (c). 
Kacz contends that Cornelio had Aviolated the law
with impunity,@ committing Amultiple felonies.@  These Afelonies@ appear to have
included failing to stop and give information under Transportation Code Section
550.021(a)(1B3), evading arrest or detention under Penal Code
section 38.04(a), and either aggravated assault of a public servant or
robbery.  See Tex. Penal Code Ann. '' 22.02(b)(2)
(Vernon 2003 & Supp. 2008) & 29.03(a) (Vernon 2003).








As we have already discussed, there was no evidence of
either death, injury, or vehicular damage resulting from the alleged collision
on the tollway to provide a reasonable basis for Kacz=s
failure-to-stop-and-give-information complaint.  See Tex. Transp. Code
Ann. '_ 550.021B.022.  Absent this
offense, Kacz cannot reasonably claim that Cornelio evaded a lawful arrest or
detention, as there was no underlying offense to justify an arrest or
detention.  See Tex. Penal Code Ann. ' 38.04(a). 
Consequently, Kacz=s only lawful basis for arresting Cornelio
would be based on the confrontation in the parking lot.

On that note, Kacz contends that Cornelio committed
aggravated assault of a public servant during the incident in the parking lot,
and that this offense justified his use of deadly force.  For Cornelio to be
liable for that offense, however, the assault has to occur Awhile the public
servant is lawfully discharging an official duty . . . .@  Tex. Penal Code
Ann. ' 22.02(b)(2)(B). 
But as Kacz was not attempting a lawful arrest, there were no grounds on which
the jury could have found for Kacz based on aggravated assault of a peace
officer.  See Tex. Penal Code Ann. ' 22.02(b)(2)(B).

Kacz also contends that Cornelio=s actions in the
struggle for Kacz=s handgun amount to robbery.  For the jury
to find that Cornelio committed robbery, Kacz needs to show that Cornelio
intentionally, knowingly, or recklessly caused bodily injury to Kacz, or placed
Kacz in fear of imminent bodily injury or death, while Cornelio attempted to
exercise control over the handgun in such a manner as to deprive Kacz of the
use of his weapon.  See Tex. Penal Code Ann. '' 29.02(a) (Vernon
2003), 31.03(a), (b) (Vernon 2003 & Supp. 2008) & 31.01(4)(B) (Vernon
2003 & Supp. 2008).  In this context, to Adeprive@ would
specifically mean that Cornelio intended to withhold Kacz=s handgun from him
permanently or for such an extended a period of time that a major portion of
the value or enjoyment of the property is lost to the owner.  Id. ' 31.01(2)(A). 








The evidence concerning the struggle over the handgun is
very limited.   At trial, Sergeant Fojt testified that when he first approached
Kacz in the parking lot, he was Avisibly upset,@ and had abrasions
and blood on his body consistent with having been in a Ascuffle.@  Fojt further
testified that Kacz told him that an occupant of the Explorer, later identified
as Cornelio, got out of the truck and Acame at him@ with one hand in
his pocket.  Sergeant Fojt testified to the significance of this fact, that police
officers are trained to be wary of suspects with hands in their pockets because
of the dangers associated with unseen threats.  According to Fojt=s testimony, Kacz
told him that he had identified himself to his attacker as a police officer,
but that the man kept coming at him.  Kacz also told him that in the ensuing
struggle for Kacz=s handgun, it had discharged.  Fojt
testified that Kacz told him that the man got away from him, returned to the
Explorer, and then sped away.  It was at this point, according to Fojt, that
Kacz claimed to have fired two shots at the Explorer.  

Pasadena Police Detective Terry Sulphin testified that he
inspected the area where the struggle took place, which he described as Avery dark.@  He also
testified that he observed a bite mark on Cornelio and a Aknot@ on his head. 
Detective Sulphin also saw abrasions on Kacz, as well as scuff marks on his
boots and tears in his jeans.  

Sergeant Fojt testified that it was against Pasadena Police
Department policy for officers to pursue suspects in unmarked vehicles,
specifically because the person under pursuit might not know that his pursuer
was actually a police officer.  Detective Sulphin testified that when
inspecting Kacz=s pickup truck, he observed a police
windbreaker wadded up on the passenger=s seat.








Cornelio testified that after Esteban had passed Kacz on
the tollway, Kacz got angry.  He related that Kacz followed them for about ten
minutes before they each stopped at a redlight off of the tollway.  At that
point, according to Cornelio, Kacz approached the Explorer with his handgun
drawn.  Cornelio testified that Kacz told Esteban to give him the truck.  Both
Esteban and Arantez testified that they feared Kacz would shoot them.  At that
point, according to Esteban, he ran the red light to get away.  Esteban said he
drove to the apartment complex because that was where Cornelio was living at
the time.  When they arrived, Esteban and the others ran away.  Cornelio also
left the Explorer, but because he feared the person following them wanted to
steal his vehicle, he went back to get the keys.  After he retrieved the keys
from the ignition, Cornelio testified that Kacz pulled a gun on him.  Cornelio
acknowledged that Kacz said he was a police officer, but Cornelio did not
believe him.  Cornelio further testified that he refused to give his keys to
Kacz.  According to Cornelio=s testimony, Kacz then hit him on the head
with the butt of his handgun.  Cornelio then grabbed Kacz=s arm, and the men
fell to the ground wrestling for control of the handgun.  Under cross‑examination,
Cornelio admitted to throwing a beer bottle at Kacz.  He also testified that at
some point he knocked the handgun out of Kacz=s hand.  At that
point, Cornelio said that he ran to the Explorer, got in, and sped away.  As he
drove away, Cornelio said he heard four gunshots.  He was stopped moments later
by police officers arriving at the apartment complex.  

The State also presented testimony from Geraldo Salas, a
resident of the apartment complex.  Mr. Salas testified that on the night of
the incident, he heard a noise from the parking lot Alike an impact on
the door.@  When he looked outside, he saw what looked to be two
men fighting.  Salas testified that he saw a man in a striped shirt on top of
another man, and that the man in the striped shirt had his knee on the neck of
the other man while he was hitting him.  Salas testified that he did not see a
badge or any other indication that the man in the striped shirt was a police
officer.  According to Salas, he then yelled at the men to stop because he was
going to call the police.  At that point, Salas testified, the man in the
striped shirt said he was a police officer.  Salas then went back into his
apartment and told his wife to call 9‑1‑1.  Salas testified that he
then went back outside and again yelled at the men to stop fighting.  At that
point, Salas said that the man in the striped shirt got off of the other man. 
The man who had been on the ground then got up and ran to his SUV.  Salas said
he witnessed the man in the striped shirt then fire four shots at the SUV as it
drove away.

There was no testimony that Cornelio made any attempt to
obtain Kacz=s handgun after it was knocked out of Kacz=s hand.  All of
the testimony supported the conclusion that once he had freed himself, he fled
the scene.  Based on this evidence, the jury could have considered the
testimony and concluded that Cornelio was not trying to rob Kacz of his gun,
but was merely attempting to defend himself until he could escape.








Finally, Kacz contends that, based on the confrontation in
the parking lot, it was reasonable to conclude that there was a Asubstantial risk@ that, if allowed
to escape arrest, Cornelio would cause serious bodily injury or death to Kacz
or someone else.  But Kacz=s fear that Cornelio intended him harm is
belied by the fact that Cornelio was driving away from Kacz, instead of
toward him.  And there was no evidence that Cornelio intended harm to anyone
else.  It was reasonable for the jury to believe he was simply trying to get
away from Kacz.[7]  


B.      Credibility

Kacz argues forcefully on appeal that he presented a vastly
more credible case at trial and that the evidence supporting the verdict is
factually insufficient precisely because credibility weighs so heavily in his
favor.  He refers to Detective Bruegger=s testimony that
Cornelio gave a false name and someone else=s identification
when he was arrested.  Other testimony revealed that Cornelio also gave the
police incorrect information about whether he had been driving the Explorer,
where he resided, what type of vehicle Kacz drove, and how many people had been
following the Explorer, among other things.  Indeed, Cornelio admitted at trial
that he had lied to the police the night of the incident.

But none of Cornelio=s lies expose any
justification for Kacz firing upon him as he drove away.  Neither does Pasadena
police officer Jose Ortiz=s testimony that Cornelio told him that
Kacz had identified himself as a police officer and motioned for him to pull
over before the Explorer reached the complex. 








More pointedly, Kacz=s credibility was
likewise less than impeccable.  Though he insisted that the Explorer had
collided with his truck on the tollway, there was no other evidenceCphysical or
testimonialCthat such a collision ever happened.[8] 


Our review should not intrude upon the jury=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  See
Fuentes v. State, 991 S.W.2d 267, 271B72 (Tex. Crim.
App. 1999); Bargas v. State, 252 S.W.3d 876, 887 (Tex. App.CHouston [14th
Dist.] May 13, 2008, no pet.).  The jury was free to weigh the credibility of
Kacz=s and the other
witnesses= testimony, including Cornelio=s, as well as the
testimony regarding the physical evidence.  

Even considering the evidence that appellant contends is
contradictory to the State=s case, we cannot say that the jury=s verdict in this
case was against the great weight and preponderance of the evidence.  Nor can
it be said that, in light of this evidence, the jury=s verdict was
manifestly unfair or unjust.  Consequently, the evidence was factually
sufficient to justify the jury=s verdict.  See Watson, 204 S.W.3d
at 414‑15; Newby, 252 S.W.3d at 435. We overrule Kacz=s
factual-sufficiency  issue.

III.      Denial
of Mistrial

In his third issue, Kacz contends that the trial court
erred in denying his request for a mistrial after the State inquired about Kacz=s invocation of
his right to remain silent and his right to counsel.  The State replies that
the trial court sustained Kacz=s objection, and appropriately instructed
the jury not to consider the question.  But Kacz argues that this instruction
was insufficient to counteract the prejudicial effect of the State=s question.








At trial, while the State was questioning Sergeant Fojt
about his conversation with Kacz in the parking lot on the night of the
incident, the following exchange took place:

PROSECUTOR:      Were you able to
ask Officer Kacz any follow-up questions about what he told you?

SGT.  FOJT:          No. 
We had discussed it briefly when I first got there.

PROSECUTOR:      All right.  He
stopped talking to you and asked for a lawyer, didn=t he?

DEFENSE:            I=m going to object,
Judge, and ask that we approach.

(Conference at the bench)

DEFENSE:            I=m going to have to object and ask
for an instruction.  We have to object.  We asked those questions, I=m going toC 

THE COURT:          I=m going to tell
them not to consider it.

PROSECUTOR:      They=re listening to all of this. 
First, he=s not under arrest; and if he stops
talking to this officer because he wanted counsel, that=s just a fact.  It is notCit is not unduly prejudicial to
him.

THE COURT:          I
understand.

PROSECUTOR:      I justCYour Honor, I have no other way to
explain why the interrogationCwhy the questions stopped, but they are listening to all of this on
cross-examination.

DEFENSE:             So,
let the record reflect that I=ve asked for a mistrial.

THE COURT:          I=m not going to.

DEFENSE:            I
understand.

(Questions resume)

THE COURT:          Ladies
and gentlemen, you are instructed not to consider the last question.  It was
asked, it wasn=t answered, so you don=t have to consider
that question for any purpose.








We review the trial court=s denial of a
mistrial for an abuse of discretion, keeping in mind that a mistrial is
required only in extreme circumstances when the prejudicial nature of the
objectionable matter presented is incurable.  Hawkins v. State, 135
S.W.3d 72, 76B77 (Tex. Crim. App. 2004); Austin v. State, 222
S.W.3d 801, 815 (Tex. App.CHouston [14th Dist.] 2007, pet. ref=d).  Here, because
the trial court sustained Kacz=s objection and instructed the jury to
disregard the question, but denied Kacz=s request for a
mistrial, we must determine whether the State=s question was so
harmful that the case must be retried.  See Hawkins, 135 S.W.3d at 77. 
To do so, we balance three factors: (1) the prejudicial effect of the question;
(2) the curative measures taken; and (3) the likelihood of Kacz=s conviction
absent the improper question.  Mosley v.  State, 983 S.W.2d 249, 259
(Tex.  Crim.  App.  1998); see Hawkins, 135 S.W.3d at 77 (adopting Mosley
factors to evaluate whether the trial court abused its discretion in
denying a mistrial); Austin, 222 S.W.3d at 815 (applying Mosley factors
when instruction to disregard was given after the State elicited testimony
barred by trial court=s ruling on motion in limine).  If, as
here, the court has instructed the jury to disregard improper evidence, we
presume that the jury has followed the instruction, unless that presumption is
rebutted by contrary evidence. Thrift v. State, 176 S.W.3d 221, 224
(Tex. Crim. App. 2005).  In determining whether the erroneous evidence mandates
a new trial, we look at the facts and circumstances of the case to see if the
trial court=s instruction cured the admission.  Ladd v. State,
3 S.W.3d 547, 567 (Tex. Crim. App. 1999).                








Here, the prejudicial effect was minimal for two reasons. 
First, the witness never answered the State=s question, so the
jury never heard whether Kacz had invoked any constitutional rights.  Second,
the prosecutor=s question merely asked, AHe stopped talking
to you . . . didn=t he?@  The prosecutor
never asked if Kacz actually invoked his right to silence; he merely mentioned
that Kacz Astopped talking.@  As demonstrated
on cross-examination, Kacz told Sergeant Fojt his version of the events that
night.  But Sergeant Fojt was unable to test these statements or ask follow-up
questions because Kacz Astopped talking.@  The State was
seeking not to prejudice Kacz, but rather to explain the gap in Sergeant Fojt=s testimony to the
jury.

Kacz argues that the severity of the misconduct in this
case weighs heavily in his favor, relying on Justice Murry Cohen=s concurrence in Hicks
v. State, 815 S.W.2d 299, 304 (Tex. App.CHouston [1st
Dist.] 1991) (AThe prosecutor in this case violated a rule that has
been characterized by the Court of Criminal Appeals as >hornbook law= that >no reasonably
competent prosecutor= would violate.@), abrogated by
Motilla v. State, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002) (standardizing
the rule that overwhelming evidence of guilt may be used as a factor to be
considered under a harm analysis for constitutional error not affecting
substantial rights).  Kacz argues that this Aprohibition . . .
violated@ by a Aveteran@ prosecutor was
not only Aanything but novel,@ but one that Aany prosecutor,
let alone a veteran prosecutor, would know was impermissible.@  But the facts in
this case are clearly distinguishable from those earning Justice Cohen=s rebuke in Hicks. 
During the closing argument in the Hicks trial, the State referred
repeatedly to the defendant=s failure to testify on his behalf.  Id.
at 301B02.  The defendant
objected each time, and the trial court overruled every objection.  Id. 
The differences between Hicks and this case are obvious, and Kacz=s reliance on it
is misplaced. 

The second prong of the Mosley analysis concerns
what curative measures the trial court employed.  That prong was satisfied in
this case when the trial court sustained Kacz=s objection and
instructed the jury to disregard the question.  








Under the third prong, we must consider the certainty of
conviction absent the prosecutor=s question.  As we
have already stated, the evidence in this case was factually sufficient for the
jury to convict Kacz absent any effect of the objectionable question.  Further,
there was nothing in the record to suggest that the jury was in any way
persuaded or affected by the State=s question.  See
Thrift, 176 S.W.3d at 224 (appellant must rebut presumption pointing to evidence that the jury
failed to follow the trial court=s instructions); see also
Phillips v. State, 130 S.W.3d 343, 356 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d) (when the record shows no evidence to
the contrary, we assume the jury followed the trial court=s instruction to
disregard).  We see no evidence that this isolated question prejudiced Kacz to
such a degree as would affect the outcome of his trial.  But even if we were to
count this factor in Kacz=s favor, it would represent only one of
the Mosley factorsCthe other two falling squarely in the
State=s favor.

We hold that the trial court did not abuse its discretion
in refusing to grant a mistrial.  Kacz=s third issue is
overruled.

Conclusion

For the reasons detailed above, we affirm the trial court=s judgment.

 

 

 

 

 

/s/      Jeff Brown

Justice

 

 

Panel consists of Chief Justice Hedges, and Justices
Guzman, and Brown.

Publish C Tex.  R.  App.  P.  47.2(b).









[1]  In this case, Kacz maintains that evading a police
offer would be a state-jail felony because Cornelio used a vehicle to flee.  See
Tex. Penal Code Ann. _ 38.04(a), (b)(1) (Vernon 2003).





[2]  The parties agree in their briefing that defense
counsel was arguing that Sanchez had made a Astatement
against interest.@





[3]  AStatement
Against Interest.  A statement which was at the time of its making . . . so far
tended to subject the declarant to civil or criminal liability . . .
that a reasonable person in declarant=s
position would not have made the statement unless believing it to be true.  In
criminal cases, a statement tending to expose the declarant to criminal
liability is not admissible unless corroborating circumstances clearly indicate
the trustworthiness of the statement.@ 
Tex. R. Evid. 803(24).





[4]  Because Sanchez=s
statement does not qualify as one against his penal interest, we do not reach
the second part of the inquiry under Rule 803(24)Cthe exploration of corroborating circumstances indicating the
trustworthiness of the statement.





[5]  It bears noting that, on appeal, Kacz does not challenge the jury=s verdict on the basis that he was
acting in self-defense.  Rather, Kacz bases his appeal solely upon the
justification provided to police officers by section 9.51 of the Penal Code.  See
id.





[6]  Kacz justifies his use of deadly force under section
9.51(c).  But this subsection is predicated upon whether or not  Athe use of force would have been justified under
Subsection (a) . . . .@  Tex. Penal Code Ann. ' 9.51(c).  Therefore the requirements of both subsections apply.





[7]  Kacz relies on Sappington v. Bartee, 195 F.3d 234 (5th Cir. 
1999) (per curiam), as authority for the proposition that a peace officer is
justified in using deadly force to resist an assault by a suspect with whom he
has struggled.  In Sappington, a federal-prison inmate sued a police
officer for violating his constitutional rights in the course of arresting
him.  But the Fifth Circuit held that the officer was entitled to judgment as a
matter of law because the plaintiff had been convicted of an aggravated assault
of the officer arising out of the same incident.  Id. at 237.  In this
case, on the other hand, Cornelio was never even charged with assaulting Kacz,
much less convicted of it.  Sappington is inapplicable here.  It remains
that without a legitimate cause for arrest, Kacz could not have been justified
in his use of deadly force against Cornelio under subsection 9.51(c)(1).  See
Tex. Penal Code Ann. ' 9.51(c).  





[8]  Kacz also directs us to Detective Breugger=s opinion that Cornelio had been
drinking on the night of the incident.  But Sergeant Fojt testified that he
smelled alcohol on Kacz=s breath, too.  There is no
evidence that either was charged with either driving under the influence or
public intoxication.