Affirmed
and Memorandum Opinion filed September 22, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00135-CR

____________

 

DONALD G. HOCK, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Court at Law No. 3 and Probate Court

Brazoria County, Texas

Trial Court Cause No. 159253

 



 

M E M O R A N D U M   O P I N I O N

Donald G. Hock was convicted of
assault and sentenced to confinement in the Brazoria County jail for 365 days and
assessed a $4,000 fine.  Hock challenges his conviction and sentence on
multiple grounds.  We affirm.








I

Donald Gerne Hock and Keitha Bland,
the mother of the complainant, had been in a tumultuous relationship for
several years that required police intervention on numerous occasions.  Hock
pleaded Aguilty@ in November 2003
to a complaint of assault causing bodily injury to Bland arising from a
December 2002 incident.  Hock also was arrested for an assault causing bodily
injury to Bland in July 2003.  A protective order was issued following these
events.  Hock violated that protective order and was convicted of the July 2003
offense in 2007.  Despite the protective order and Hock=s assaults, Bland
secretly continued her relationship with him until the night at issue.

Sometime between 8:30 p.m. and 9:00
p.m. on Friday, June 9, 2007, Bland picked up Hock and drove him to her house
in Sweeny.  Later that night, Bland left the house and picked up her son, C.K.,
and brought him home from a friend=s house.  Bland
took C.K. to his room where she put him to bed.  Bland then returned to her
bedroom.  Sometime later that night, C.K. heard Hock in his mother=s room.  Neither
C.K. nor his sister, the complainant, approved of their mother=s relationship
with Hock.  After realizing Hock was in his mother=s room, C.K. left
the house and walked to a convenience store a few blocks away.  C.K.=s sister, the
complainant, worked at the store, and he went there to tell her that Hock was
at the house.  Upon receiving this information, the complainant instructed C.K.
to return home and wait for her to arrive.

Shortly after midnight, the
complainant arrived at the house to confront her mother and Hock.  The
complainant entered her mother=s bedroom and discovered her mother and
Hock lying in bed together.  The complainant demanded an explanation from her
mother for continuing to associate with Hock.  An argument between the two
ensued, and Bland pushed the complainant out of the room into the hallway.








According to both the complainant
and Bland, Hock suddenly appeared and forced the complainant into C.K.=s nearby bedroom. 
Hock then pushed the complainant onto the bed and struck her in the face and
the back of her head with a closed fist.  The complainant suffered numerous
injuries as a result, including a bloody lip. 

It was disputed at trial where C.K.
was located during the struggle.  However, C.K. exited the house at some point
with a cellular phone.  He shouted to those inside that he was calling 9-1-1,
at which point Hock fled the premises.  Officer Harold Douglas of the Sweeny
Police Department arrived shortly thereafter but was unable to locate Hock. 
Officer Douglas and the complainant went to the police station where she later
filed charges against Hock. 

Hock was tried by a jury in
Brazoria County Court at Law No. 3 on two separate counts of assault: one for
pulling the complainant=s hair, and another for striking her.  The
jury convicted Hock on the second count and acquitted him on the first. 
Punishment was assessed at 365 days= confinement in
the Brazoria County jail and a fine of $4,000.  This timely appeal followed.

II

Hock challenges his conviction and
sentence contending that: (1) the evidence presented during trial is factually
and legally insufficient to support his conviction; (2) the trial court
submitted an improper jury charge; (3) the trial judge=s conduct unfairly
prejudiced him in the eyes of the jurors; and (4) his sentence was
disproportionately harsh.  We will address each in turn. 

A








In Hock=s first point of
error, he claims that the evidence used to convict him at trial is legally and
factually insufficient.  Specifically, Hock points to: (1) the lack of physical
evidence connecting him to the offense; (2) Bland=s failure to give
a statement to police on the night of the offense; (3) the credibility and
alleged bias of the State=s witnesses; and (4) the murky quality of
photographs of the victim provided at trial. 

1

When reviewing a question of legal
sufficiency, we consider all evidence in the light most favorable to the
verdict and then determine whether any rational trier of fact, based on that
evidence and any reasonable inferences therefrom, could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 318B19 (1979); Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007); Wooten v. State, 267 S.W.3d 289,
294 (Tex. App.CHouston [14th Dist.] 2008, pet. ref=d).  Further, we
must keep in mind that the jury is the sole judge of the credibility of the
witnesses and is free to believe or disbelieve any part of a witness=s testimony.  Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); Jones v. State,
984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  We will disturb the verdict only
if this court can conclude that the jury=s verdict is
irrational.  See King v. State, 29 S.W.3d 556, 562B63 (Tex. Crim.
App. 2000); Harris v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d); see also Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999) (reviewing court should not become a Athirteenth juror@). 

A person commits the offense of
assault if he Aintentionally, knowingly, or recklessly causes bodily
injury to another . . . .@  Tex. Penal Code Ann. ' 22.01(a)(1)
(Vernon 2003 & Supp. 2008).  A>Bodily injury= means physical
pain, illness, or any impairment of physical condition.@  Tex. Penal Code
Ann. ' 1.07(a)(8) (Vernon 2003 & Supp. 2008).  This
broad definition encompasses Aeven relatively minor physical contacts so
long as they constitute more than mere offensive touching.@  Henry v.
State, 800 S.W.2d 612, 614 (Tex. App.CHouston [14th
Dist.] 1990, no pet.) (quoting Lane v. State, 763 S.W.2d 785, 786 (Tex.
Crim. App. 1989)).








At trial, the State presented
testimony from several witnesses including Bland, the complainant, and C.K. 
Bland testified that on the night of the incident, she was awakened by the
complainant who was yelling at her for letting Hock back into her house.  Bland
stated that she got up and tried to push the complainant out of her bedroom,
and the argument continued in the hallway.  According to Bland, Hock then moved
past her and grabbed the complainant by the shoulders.  Bland testified that
Hock and the complainant ended up in C.K.=s bedroom, with
Hock straddling the complainant as she lay on the bed.  Bland saw Hock strike
the complainant in the face several times.  After Hock left the house, Bland
observed that the right side of the complainant=s mouth was
bleeding.

Similarly, the complainant
testified that during the hallway argument with her mother, Hock suddenly
appeared and pushed her into C.K.=s room.  The
complainant stated that Hock  punched her in the face once, cutting her lip. 
She testified that Hock struck her several more times on the back of her head. 


C.K., who was eleven years old at
the time of the incident, testified that Hock grabbed the complainant by the
arm, threw her onto his bed, and hit her with his fist about five times while
straddling her with her arms pinned under his knees.  C.K. observed that, after
Hock had punched the complainant, her lip was bleeding and her eyes were
swollen.  

This testimony satisfies the
essential elements of the charged offense.  See Tex. Penal Code Ann. ' 22.01(a)(1); see
also Letson v. State, 805 S.W.2d 801 (Tex. App.CHouston [14th
Dist.] 1990, no writ) (victim=s testimony was legally sufficient
evidence to support assault convictions).  When viewing the testimony of the
complainant and her family in the light most favorable to the verdict, a
rational trier of fact could have found Hock guilty of assault.  See Tex.
Penal Code Ann. ' 22.01(a)(1); Hooper, 214 S.W.3d at
13; Wooten, 267 S.W.3d at 294.  We find the evidence legally sufficient
to uphold Hock=s conviction. 








2

When reviewing a
factual-sufficiency challenge, we view all the evidence neutrally.  Watson
v. State, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006); Newby v.
State, 252 S.W.3d 431, 435 (Tex. App.CHouston [14th
Dist.] 2008, pet ref=d).  A jury=s verdict may be
set aside only if this court finds: (1) the evidence is so weak that the
verdict is clearly wrong and manifestly unjust; or (2) the verdict is against
the great weight and preponderance of the evidence.  Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000); Newby, 252 S.W.3d at 435.  This
court is first directed to the evidence that the appellant contends undermines
the jury=s verdict.  Newby,
252 S.W.3d at 435; see also Roberts v. State, 221 S.W.3d 659, 665 (Tex.
Crim. App. 2007).  Although we may disagree with the jury=s conclusion, we
must avoid substituting our judgment for that of the jury.  Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005); Newby, 252 S.W.3d at 435.

Hock contends that the evidence is
factually insufficient to support his conviction for three reasons: (1) there
was no physical evidence offered at trial; (2) the key testimony of witness
Bland was not credible because she failed to give a written statement to police
on the night of the incident; and (3) the photographs of the complainant=s injuries were unreliable.









The State introduced into evidence
eighteen photos of Bland=s house and the surrounding area at
trial.  The State also introduced court documents including prior complaints
and court orders demonstrating Hock=s history of
violent behavior, as well as his violation of prior restraining orders.  There
was no physical evidence tying Hock to the alleged assault.  Nevertheless,
despite Hock=s argument to the contrary, eyewitness testimony alone
can be sufficient to support a conviction.  Johnson v. State, 176 S.W.3d
74, 78 (Tex. App.CHouston [1st Dist.] 2004, pet. ref=d) (citing Bowden
v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982)).  There is no
specific legal requirement of physical evidence linking a defendant to an
offense.  See Lancon v. State, 253 S.W.3d 699, 706B07 (Tex. Crim.
App. 2008) (lack of physical evidence alone was not dispositive in
factual-sufficiency review when witness testimony was available for the jury=s consideration). 
Such evidence would represent only a portion of the evidence considered by the
jury, and we must consider all the evidence presented.  Watson, 204
S.W.3d at 415; Newby, 252 S.W.3d at 435.  

Next, Hock contends that Bland=s trial testimony
against him was not credible because she failed to give a statement to police
on the night of the incident.  This fact was presented to the jury when Hock
cross-examined Bland.  The jury was free to believe either the prosecution=s version of the
events of that night, including the testimony of the victim and her family, or
Hock=s.  This court
should refrain from intruding on the jury=s verdict when it
centers on the credibility of witnesses.  See Jones v.  State, 944
S.W.2d 642, 648 (Tex. Crim. App. 1996) (stating that the jury is the sole judge
of the credibility of the witnesses and the weight given to their testimony). 

Finally, Hock asserts that the
photographs of the complainant=s injuries admitted at trial were Ainsufficient and
unreliable evidence.@  Some of the photographs featured a
computer date stamp on the back that, according to Hock, reads, AWalgreens 4/4/07.@  Hock contends
that this date makes the photographs unreliable because the incident in
question occurred on June 10, 2007.  The complainant testified that her fiancé
took the photos on June 10, 2007, after the assault had occurred.  The State
demonstrated that at least one of the photographs was stamped A2007/06/14.@  








Hock also argues that the
photographs are insufficient because they are too dark to clearly illustrate
what they purport to showCthe complainant=s injuries
resulting from Hock=s assault.  Hock=s defense counsel,
not the State, offered the photographs for admission into evidence at trial. 
When defense counsel was laying the foundation to admit the photos, the
complainant stated that the photos do not Afairly and accurately
depict [her] alleged injuries@ because the photos are too dark.  Roberta
Strickland, Bland=s sister, also testified that the photos
were too dark to show the complainant=s injuries
clearly.  Strickland also testified to seeing the complainant with a Abusted lip@ on Sunday, June
9, shortly after the incident. 

Hock presented alibi evidence at
trial in the form of testimony from his mother, Vivian Floy Smith.  Smith
testified that Hock had lived with her since 2006, and that he had not dated
Bland since 2003.  Smith further testified that Hock returned home around 9:30
p.m. on June 9, 2007, and was still at home when she went to bed around 12:15
a.m.  Smith stated that she got up around 2:00 a.m. and saw Hock lying in his
bed.  Finally, Smith testified that Hock could not have been wearing a specific
ring on June 9, because it was being repaired at that time.  Bland had
testified that Hock was wearing the ring on the night of the incident.

Hock took the stand in his defense
and likewise testified that he had gone home around 9:30 p.m. on June 9, and
went to bed around midnight.  Hock denied having any contact with Bland since
2003, denied ever setting foot in Bland=s house depicted
in the photographs introduced at trial, and denied wearing the ring as
described by Bland on the night of the incident.  Hock generally denied all
facts related to the assault and asserted that he was not at Bland=s home that
night.  Hock did admit to hitting Bland on a prior occasion, as well as to
pleading Aguilty@ to choking her.  Further, the State
demonstrated inconsistencies with Hock=s prior testimony
regarding when he and Bland had dated, and whether he had ever hit her.








A jury verdict is not manifestly
unjust nor against the great weight and preponderance of the evidence if the
jury resolves conflicting views of evidence in favor of the State.  See Cain
v.  State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).  Appellate courts
should afford almost complete deference to a jury=s decision when
that decision is based upon an evaluation of credibility.  Lancon, 253
S.W.3d at 705.  The jury is in the best position to judge the credibility of a
witness because it is present to hear the testimony, as opposed to an appellate
court who relies on the cold record.  Id.  Considering the evidence in a
neutral light, the jury=s verdict was not clearly wrong and
manifestly unjust; nor was the verdict against the great weight and
preponderance of the evidence.  The jury here was entitled to believe the
complainant, Bland, and Strickland.  Therefore, the evidence presented at trial
is factually sufficient to support Hock=s conviction.  See
Watson, 204 S.W.3d at 414B15; Drichas, 175 S.W.3d at 799B800; Newby,
252 S.W.3d at 435. 

Having found the evidence both
legally and factually sufficient to sustain Hock=s conviction, we
overrule Hock=s first point of error. 

B

In his second issue, Hock contends
that the jury charge was improper because it denied him his constitutional
right to a unanimous verdict.  Hock claims the charge allowed the jury to
convict him without a unanimous verdict because the charge submitted two
separate offenses in the disjunctive. The State responds that the jury charge
appropriately asked the jury to consider alternate methods of carrying out the
same offense.  

When reviewing a jury charge, this
court must first determine whether error actually exists.  Ngo v. State,
175 S.W.3d 738, 743 (Tex. Crim. App. 2005); Isenhower v. State, 261
S.W.3d 168, 174B75 (Tex. App.CHouston [14th
Dist.] 2008, no pet.).  If this court finds error in the charge, the next step
is to determine whether harm exists because of that error.  Ngo, 175
S.W.3d at 743; Isenhower, 261 S.W.3d at 175B76.  The scope of
review includes the entire jury charge, as well as the state of the evidence,
including the contested issues and the weight of the probative evidence, the
final arguments of the parties, and any other relevant information revealed by
the record of the trial as a whole.  Allen v. State, 253 S.W.3d 260, 264
(Tex. Crim. App. 2008); Barnes v. State, 855 S.W.2d 173, 175 (Tex. App.CHouston [14th
Dist.] 1993, pet. ref=d).








Under the Texas Constitution and
Code of Criminal Procedure, a jury in Texas must reach a unanimous verdict;
however, that does not mean the jury must unanimously find that the defendant
committed that crime in one specific way.  Landrian v.  State, 268
S.W.3d 532, 535 (Tex. Crim. App. 2008); see also Schad v. Arizona,
501 U.S. 624, 632 (1991) (the Due Process Clause allows a state to Adefine different
courses of conduct, or states of mind, as merely alternative means of
committing a single offense, thereby permitting a defendant=s conviction
without jury agreement as to which course or state actually occurred@); Drew v.
State, 76 S.W.3d 436, 457 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d).  If the statute forming the basis of
the jury charge lends itself to a disjunctive interpretation, then the jury
need not decide unanimously how the defendant committed the crime.  See
Schad, 501 U.S. at 632B33. 

The Court of Criminal Appeals has
divided offenses under the Penal Code into two categories: (1) Aconduct-oriented@ offenses, and (2)
Aresult-oriented@ offenses.  Huffman
v. State, 267 S.W.3d 902, 905B06 (Tex. Crim.
App. 2008).  AIf the focus of the offense is the resultCthat is, the
offense is a >result of conduct= crimeCthen different
types of results are considered to be separate offenses but different types of
conduct are not. On the other hand, if the focus of the offense is the conductCthat is, the offense
is a >nature of conduct= crimeCthen different
types of conduct are considered to be separate offenses.@  Id. at
907.

With result-oriented offenses, a
jury charge may allege Aalternative theories of committing the
same offense;@ however, a jury charge may not disjunctively present
conduct-oriented offenses.  Kitchens v. State, 823 S.W.2d 256, 257 (Tex.
Crim. App. 1991); see also Huffman, 267 S.W.3d at 905B06.  In Landrian
v. State, the court further concluded that assault under subsection (a)(1)
is a Aresult-oriented@ offense, thus
permitting a jury charge alleging alternative means of committing an assault. 
268 S.W.3d at 536; see Huffman, 267 S.W.3d at 907.  

The relevant portions of the jury
charge in this case are as follows:








. . . [I]f you believe from the
evidence beyond a reasonable doubt that the Defendant, Donald G. Hock, did, on
or about the 10th day of June, 2007 . . . knowingly or intentionally
or recklessly cause bodily injury to another, namely [the complainant], to wit:
by pulling [the complainant] by her hair, then you will find the Defendant
guilty as charged and say so by your verdict; but if you do not so believe or
if you have a reasonable doubt thereof, you will acquit the Defendant and say
by your verdict Anot guilty.@

. . . [I]f you believe from the evidence beyond a reasonable doubt that
the Defendant, Donald G. Hock, did, on or about the 10th day of
June, 2007 . . . knowingly or intentionally or recklessly cause bodily injury
to another, namely [the complainant], to wit: punching said [complainant] about
her head with the Defendant=s hand, then you will find the Defendant
guilty as charged and so by your verdict; but if you do not so believe or if
you have a reasonable doubt thereof, you will acquit the Defendant and say by
your verdict Anot guilty.@

 

Hock points to several cases to
bolster his contention that in the jury charge the State alleged two separate
offenses under the Penal Code; however, the cases Hock relies upon deal
exclusively with statutes involving the sexual assault of a child, which is
classified as a Aconduct-oriented@ offense.  Huffman,
267 S.W.3d at 905B06; see also Patterson v. State, 152
S.W.3d 88, 89B93 (Tex. Crim. App. 2004); Francis v. State, 36
S.W.3d 121, 122B25 (Tex. Crim. App. 2000); Vernon v.
State, 841 S.W.2d 407, 410B12 (Tex. Crim. App. 1992). 








Because assault is a Aresult-oriented@ offense, the
disjunctive submission was not error.  Landrain, 268 S.W.3d at 536;
see also Jefferson v. State, 189 S.W.3d 305, 312 (Tex. Crim. App.
2006) (jury charge in murder case was appropriately disjunctive because murder
is a result-oriented offense); Kitchens, 823 S.W.2d at 258 (same); Drew,
76 S.W.3d at 457 (same).

Having found no error with the jury
charge in this case, we need not conduct a harm analysis.  Hock=s second issue is
overruled. 

C

In Hock=s third point of
error, he argues that comments by the judge showed a bias that deprived him of
a fair trial and unfairly influenced the jury.  The State responds that Hock failed
to object that any of the trial court=s comments
amounted to judicial bias or prejudice and he cannot demonstrate fundamental
error.  

Generally, the failure to raise a
contemporaneous objection results in failure to preserve error for appellate
review.  See Tex. R. App. P. 33.1(a); Brewer v. State, 572 S.W.2d
719, 721 (Tex. Crim. App. 1978) (when no objection is made, remarks and conduct
of the court may not be challenged on appeal unless they are fundamentally erroneous). 
In Brumit v. State, the Court of Criminal Appeals declined to decide
whether a party must object below to judicial bias or impartiality to preserve
error.  See 206 S.W.3d 639, 644B45 (Tex. Crim.
App. 2006).  Because the Court of Criminal Appeals has not spoken definitively
on this issue, we will assume for purposes of appeal that Hock is contending
that the trial court=s comments and rulings amounted to
fundamental error and therefore he was not required to object to preserve
error.  See Blue v. State, 41 S.W.3d 129 (Tex. Crim. App. 2000)
(plurality) (comments of trial judge, which tainted the defendant=s presumption of
innocence, were fundamental error of constitutional dimension and required no
objection).








Due process requires a neutral and
detached hearing body or officer.  Brumit, 206 S.W.3d at 645.  Absent a
clear showing of bias, a trial court=s actions will be
presumed to have been correct.  Id.  Judicial remarks during the course of a trial that are
critical or disapproving of or even hostile to counsel, the parties, or their
cases, ordinarily do not support a bias or partiality challenge.  Dockstader
v. State, 233 S.W.3d 98, 108 Tex. App.CHouston [14th Dist.] 2007, pet. ref=d).  Here, the trial judge
interjected certain instructions and warnings to regulate the decorum of the
proceeding, to promote the proper questioning of witnesses, and to exercise
appropriate control over the presentation of the evidence.  None of the trial
judge=s statements reveal any indication of
favoritism to either side, nor is there any indication in the record that the
trial judge=s conduct, even assuming it was improper, rendered the proceeding
fundamentally unfair to Hock or unfairly influenced the jury.  See Brumit at
645.  Hock=s third point of error is overruled.

D

In Hock=s fourth point of
error, he contends that his sentence of 365 days= confinement and a
fine of $4,000 is excessively harsh and disproportionate to the offense for
which he was convicted.  Hock further claims that the disproportionate nature
of his sentence violates the prohibition against cruel and unusual punishment
contained in the United States Constitution.  See U.S. Const. amend.
VIII. 

The Eighth Amendment to the United
States Constitution requires that a criminal sentence be proportionate to the
crime for which a defendant has been convicted.  Solem v. Helm, 463 U.S.
277, 290 (1983).  To preserve for appellate review a complaint that a sentence
is grossly disproportionate and so constitutes cruel and unusual punishment, a
defendant must present to the trial court a timely request, objection, or
motion stating the specific grounds for the ruling requested.  Tex. R. App. P.
33.1(a).; Curry v. State, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995); Briggs
v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).  There is no
indication in the record that Hock=s counsel objected
to the sentence during the sentencing phase of the trial nor did counsel file a
motion for new trial.  Absent an objection or motion for new trial regarding
the sentence imposed, Hock failed to preserve error for appeal.  See
Tex. R. App. P. 33.1(a)(1); Curry, 910 S.W.2d at 497; Briggs, 789
S.W.2d at 924.  Therefore, these complaints are waived.








Hock=s fourth point of error is overruled. 

* * *

For the foregoing reasons, we affirm the trial court=s judgment.

 

 

_

/s/        Jeffrey V.  Brown

Justice

 

 

 

 

Panel consists
of Justices Frost, Brown, and Boyce.

 

Do Not Publish C Tex. 
R.  App.  P.  47.2(b).