Affirmed and Memorandum Opinion
filed March 2, 2010

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00479-CR



Ralph Courtney
Bell, JR., Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 212th District Court

Galveston County, Texas

Trial Court
Cause No. 06CR3009



 

MEMORANDUM OPINION 

Ralph Courtney Bell, Jr., was convicted of possession
of a controlled substance and sentenced to twenty years’ confinement in the
Institutional Division of the Texas Department of Criminal Justice.  Bell
challenges his conviction on the grounds that the trial court erred by commenting
on his failure to testify, and that the evidence at trial is both legally and
factually insufficient.  We affirm.

I

            On October 3,
2006, at about 10:00 p.m., Officer James Mantooth of the Santa Fe Police
Department observed a car driving with only one headlight, which he testified
was a traffic violation.  The driver of the vehicle was Ralph Courtney Bell,
Jr.  Officer Mantooth pulled the vehicle over.  After stopping the vehicle in a
McDonald’s parking lot, Bell got out of the vehicle and started to walk toward
the back of the restaurant.  Officer Mantooth instructed Bell to stop, but instead
Bell began to run away from the officer.  Officer Mantooth radioed for backup,
and within seconds other police officers arrived on the scene to assist Officer
Mantooth.

            Bell ran across
the highway and into a trailer park while Officer Mantooth, Officer Skates,
Officer Martin, and Officer Robert Powers pursued him.  Officer Mantooth lost
sight of Bell, but ultimately came upon him and the other officers on the ground.
 The other officers were trying to handcuff Bell.  Officer Mantooth stated he
saw two clear bags filled with a white substance at the scene where Bell was
arrested, but he did not see Bell actually in possession of the bags.  

            Officer Martin
testified that when Bell started to run across the highway, he and Officer
Skates exited their vehicle and pursued Bell on foot.  He stated that he never
lost sight of Bell during the entire incident, and Bell was never more than ten
to twenty yards in front of him during the pursuit.  As he was fleeing, Bell eventually
fell to the ground, and Officer Martin witnessed Bell toss away from him what
appeared to be white bags as well as other “things.”  Once he approached Bell, Officer
Martin saw a cellphone, a small number of bills, and two bags that appeared to
contain crack cocaine laying within a five-foot radius of Bell.  He stated that
Officer Powers seized all of these items as evidence.

            Officer Powers
testified that he found a bag of white powder immediately next to Bell.  He
also stated that Officer Skates handed him another white bag that was also at
the scene.  When Bell stood up, Officer Powers testified that Bell’s shorts
fell down, and he collected the clothing as evidence.  While conducting an
inventory search of the shorts, officers found a bag of powdered cocaine, cash,
and two bottles filled with codeine.  Officer Powers inventoried Bell’s vehicle
and found more contraband in the car.  The white substance in the bags tested
positive for cocaine, and the substance in the bottles and in the vehicle
tested positive for codeine.  

Bell was arrested for possession of a controlled
substance with intent to deliver.  After hearing all of the evidence, the jury
convicted Bell of the lesser-included offense of possession of a controlled
substance and sentenced him to twenty years’ confinement.  This appeal
followed. 

II

            Bell argues the
trial court improperly commented on his failure to testify, which violated his Fifth
Amendment privilege against self-incrimination.  The State first contends that
Bell did not preserve error on the issue.  The State also argues that even if
Bell had preserved error, the trial judge’s comments were legally permissible. 
We review whether Bell preserved error for review.  

The
Texas Rules of Appellate Procedure require a party to preserve error for
appellate review by demonstrating the error on the record. Tex. R. App. P.
33.1(a); see Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App.
1995).  The party must make the complaint in a timely manner during trial and
“state[] the grounds for the ruling that the complaining party [seeks] from the
trial court with sufficient specificity to make the trial court aware of the
complaint.” Tex. R. App. P. 33.1(a)(1)(A).  The Court of Criminal Appeals has
held that even constitutional errors can be waived if a party failed to
properly object to the errors at trial.  Briggs v. State, 789 S.W.2d
918, 924 (Tex. Crim. App. 1990).  

 Unless
the error is fundamental, a party waives it by failing to object. See
Tex. R. Evid. 103(d).  Error is fundamental if it affects a party’s substantial
rights and creates egregious harm.  Tex. R. Evid. 103(d) (discussing
substantial rights); Powell v. State, 252 S.W.3d 742, 744 (Tex.
App.—Houston [14th Dist.] 2008, no pet.) (explaining egregious harm is such
harm that a defendant has not had a fair and impartial trial).  Courts have
held that when certain constitutional rights are violated, then fundamental
error can occur.  Powell, 252 S.W.3d at 744 (discussing how fundamental
errors, which are “‘structural defects in the constitution of the trial
mechanism,’” violate constitutional rights such as the right to an impartial
judge, the right to counsel, the right to not have members of the defendant’s
race unlawfully excluded from the grand jury, the right to self-representation,
and the right to a public trial) (quoting Arizona v. Fulminante, 499
U.S. 279, 309 (1991)).[1] 
  Bell does not direct us to any authority identifying the error about which Bell
complains as fundamental, nor have we found such authority.  Therefore, we
decline to extend the law as Bell suggests.    

But
even if the error were fundamental, the trial judge’s comments did not taint
the presumption of innocence or violate Bell’s Fifth Amendment rights.  In her
discussion with the jury during voir dire, the judge stated:

You’re also protected by the right not to incriminate
yourself.  You do not have to make a statement.  You do not have to say
anything if an accusation is made against you.  What that means when we come to
the trial if a person chooses to exercise that right, the jury has to respect
that.  You may be very curious and probably want the person accused to testify
because you have to wonder what do they have to say about this.  I know I would
testify if I were charged.  That’s what a lot of people say.  That’s all true
and fine.  You may be curious.  It’s okay to want them to but it’s not okay to
hold that against them.

. . .

If you’re back in the jury room saying did this person
commit the crime or not, but they didn’t testify and that makes me suspicious
and that looks bad.  I would do it if I were them so we’re going to find them
guilty.  You do the same thing if a person does not testify that you do if they
do testify.

Here,
the trial judge was attempting to instruct the jury that it could not use
Bell’s failure to testify against him.  Viewed within context, the trial
judge’s comments did not violate Bell’s Fifth Amendment rights, and in fact,
the admonishments simply explained that the jury members could not hold Bell’s
failure to testify against him even if they believed it made him appear
“suspicious” or “look[] bad.”[2] 
Therefore, we cannot conclude that the trial judge’s comment in any way injured
Bell or rose to the level of fundamental error.  Accordingly we overrule Bell’s
first issue.  

III

Bell contends that the evidence is both legally and
factually insufficient to support his conviction.  But his arguments appear to
address just factual sufficiency because he describes only contrary evidence in
his brief without discussing the evidence in the light most favorable to the
verdict.  Nonetheless, we conclude the evidence is legally and factually
sufficient to support the verdict.   

A

In evaluating the legal sufficiency of the evidence
to support a criminal conviction, we view all evidence in the light most
favorable to the verdict and determine whether a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Hooper v. State, 214 S.W.3d
9, 13 (Tex. Crim. App. 2007); Childs v. State, 21 S.W.3d 631, 634 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d).  We give deference to “‘the
responsibility of the trier of fact to fairly resolve conflicts in testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.’”  Hooper, 214 S.W.3d at 13 (quoting Jackson, 443
U.S. at 318–19).  The jury is the exclusive judge of the credibility of the
witnesses and of the weight to be given their testimony, and it is the
exclusive province of the jury to reconcile conflicts in the evidence.  Mosley
v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998).  Hence, we do not
reevaluate the weight and credibility of all the evidence or substitute our
judgment for the fact finder’s.  King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000).  Appellate courts merely ensure that the jury’s
decision was rational.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim.
App. 1993); Harris v. State, 164 S.W.3d 775, 784 (Tex. App.—Houston
[14th Dist.] 2005, pet. ref’d). The legal-sufficiency standard is the same for
both direct and circumstantial evidence.  See King, 29 S.W.3d at 565. 
In fact, circumstantial evidence, by itself, may be enough to support the
jury’s verdict.  Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App.
1999).

One inference of guilt the jury may consider is the
defendant’s flight from the scene of the crime.  See Clayton v. State,
235 S.W.3d 772, 780 (Tex. Crim. App. 2007).  The Court of Criminal Appeals has
recognized that flight is incriminating circumstantial evidence from which a
jury may infer guilt.  Id.  In relation to flight, it is also relevant
to show the efforts made to locate or apprehend the accused, the officer’s
pursuit and capture of the accused, and the accused’s resistance to arrest.  See
Hunter v. State, 530 S.W.2d 573, 575 (Tex. Crim. App. 1975). 

All of the officers that testified at trial stated that
Bell was running from the police.  While chasing Bell, Officer Martin saw him
“tossing unknown objects” that appeared to be white bags.  After Bell was
apprehended, Officer Martin testified that he saw a cellphone, a number of
bills, and two bags that appeared to contain crack cocaine on the ground close
to Bell.  Officer Powers testified that he found a clear plastic bag, which appeared
to contain crack cocaine near Bell.  He also stated that Officer Skates handed
him another bag of white substance that was found at the scene.  Officer Powers
testified that when Bell’s shorts were inventoried, yet another bag of white
powder, a substantial amount of cash, and two bottles filled with codeine were
found in Bell’s pockets.  Officer Powers also inventoried Bell’s vehicle and
discovered evidence of more contraband—liquid mixed with codeine.  Cameal
Stafford, a forensic technician, testified that all of the substances found
both on and around Bell as well as in Bell’s vehicle tested positive as
narcotics.  Finally, after the pursuit concluded, all of the officers stated
that Bell resisted arrest.  We conclude the evidence presented at trial is
legally sufficient to support the jury’s verdict.  

B

Bell also contends that the evidence presented at
trial is factually insufficient to support his conviction because “the evidence
adduced at trial regarding whether he possessed cocaine was so weak as to be
clearly wrong.”  The State argues that the evidence is sufficient to support
Bell’s conviction because not only was Bell in possession of a controlled
substance—cocaine—but there is evidence that affirmatively links Bell to the
other bags of cocaine located at the scene.  We agree with the State.  

In evaluating the factual sufficiency of the
evidence, we consider all the evidence in a neutral light.  Prible v. State,
175 S.W.3d 724, 730–31 (Tex. Crim. App. 2005); Newby v. State, 252
S.W.3d 431, 435 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d).  In our
analysis we consider the evidence appellant claims is most important in
allegedly undermining the jury’s verdict.  Sims v. State, 99 S.W.3d 600,
603 (Tex. Crim. App. 2003); Newby, 252 S.W.3d at 435.  In a
factual-sufficiency review, an appellate court asks whether the evidence
supporting the verdict is so weak or so against the great weight and
preponderance of the evidence as to render the verdict manifestly unjust.  Steadman
v. State, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009).  We do not substitute
our judgment for the fact finder’s judgment.  Drichas v. State, 175
S.W.3d 795, 799 (Tex. Crim. App. 2005); Newby, 252 S.W.3d at 435.  “‘[A]n appellate court must first be able to say, with some
objective basis in the record, that the great weight and preponderance of the .
. . evidence contradicts the jury's verdict before it is justified in
exercising its appellate fact jurisdiction to order a new trial.’”  Grotti
v. State, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008) (quoting Watson v.
State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006)).  Although we are able
to second-guess the jury to a limited degree, “the factual-sufficiency review
should still be deferential, with a high level of skepticism about the jury’s
verdict required before a reversal can occur.”  Id.  

            According
to Texas law, cocaine is a Penalty Group 1 controlled substance.  Tex. Health
& Safety Code Ann. § 481.102(3)(D) (Vernon 2003 & Supp. 2009).  A
person commits the offense of possession of a substance in Penalty Group 1 if
the person knowingly and intentionally possesses the Penalty Group 1
substance.  Id. § 481.115(a) (Vernon 2003 & Supp. 2009).  This
offense is a felony of the second degree if the person possesses an amount of
four or more grams but less than 200 grams.   Id. § 481.115(d).  To convict
a person for possession of a controlled substance, the State must show that:
(1) the accused exercised management, care, or control over the substance; and
(2) the accused knew the substance possessed was contraband.  Evans v. State,
202 S.W.3d 158, 161 (Tex. Crim. App. 2006); see King v. State, 895
S.W.2d 701, 703 (Tex. Crim. App. 1995); see also Tex. Health &
Safety Code Ann. § 481.115(a) (discussing how a person commits a Penalty Group
1 offense); Tex. Penal Code Ann § 1.07(39) (Vernon 2003 & Supp. 2009)
(defining possession).  A person’s possession of the controlled substance must
be more than fortuitous, and his mere presence at the scene where the substance
was found is insufficient to demonstrate care, management, or control of the
drug.  Evans, 202 S.W.3d at 162.  But both the Court of Criminal Appeals
and this court have concluded that presence combined with “affirmative links”—direct
or circumstantial evidence—may be sufficient to establish the element of
possession beyond a reasonable doubt.  Id. at 161–62; see Olivarez
v. State, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Evidence
that may affirmatively link a defendant to the controlled substance includes:
(1) the defendant’s presence when a search was executed; (2) the contraband was
in plain view; (3) the proximity and accessibility of the drugs to the
defendant; (4) if the defendant was under the influence when he was arrested;
(5) the defendant’s possession of other drugs or contraband when arrested; (6) if
the defendant made any incriminating statements; (7) the defendant’s furtive
gestures or attempts to flee; (8) the odor of any contraband at the scene; (9) the
presence of drug paraphernalia; (10) if the defendant owned or possessed the
location where the contraband was found; (11) if the contraband was found in an
enclosed location; (12) the defendant’s possession of large amounts of cash;
(13) if there was a significant amount of contraband; and (14) the defendant’s
conduct that would indicate consciousness of guilt.  Olivarez, 171
S.W.3d at 291.  Affirmative links are established by the totality of the
circumstances.  Id. 

Bell
argues that one of the three witnesses, Office Mantooth, admitted to not
observing Bell in possession of any narcotics.  Bell emphasizes that although Officer
Martin witnessed Bell toss unknown objects, “he did not try to investigate and
determine what those objects were.”  Officer Martin testified that he did not
collect the evidence because Officer Powers collected the evidence at the
scene.  Bell complains that Officer Powers was confused about finding Bell in
possession of cocaine because he could not remember if he found the powdered or
the crack cocaine in the bags.[3] 
Bell argues that because (1) Officer Mantooth never saw Bell in possession of
cocaine, (2) Officer Martin never specifically identified the bags recovered at
the scene as the objects that Bell tossed, and (3) Officer Powers never
witnessed Bell toss any objects, the evidence at trial is factually
insufficient to prove Bell was in possession of cocaine.  

            Bell does
concede, however, that Officer Powers did offer testimony about the plastic bag
containing cocaine found in Bell’s shorts.[4] 
In reviewing the other evidence of contraband, we consider the above factors
discussed in Olivarez.  When officers recovered the contraband, Bell was
on the ground within a five-foot radius of the plastic bags containing
cocaine.  Officer Powers testified that he found a plastic bag containing what
appeared to be cocaine immediately next to Bell, within plain view.  He also
stated that Officer Martin handed him another bag containing a white substance
that was also found on the scene.  In addition to the cocaine, Bell possessed
two bottles of codeine in his shorts pockets, and Officer Powers recovered a
liquid mixed with codeine in Bell’s vehicle.  It is also uncontroverted that
Bell attempted to flee the scene once Officer Mantooth pulled him over for a
traffic violation.  Multiple officers had to pursue Bell, and Bell resisted
arrest when the officers attempted to handcuff him.  Furthermore, Officer
Martin witnessed Bell toss the bags of cocaine, cash, and his cell phone during
Bell’s attempted escape.  Additionally, when Bell’s shorts were inventoried,
officers found more cash in the shorts pockets.  According to testimony, the
total amount of cocaine found around as well as on Bell totaled approximately
48.08 grams.  The jury presumably weighed both the contrary and favorable
evidence to the verdict, and then decided that Bell was guilty of possession of
a controlled substance.  We conclude that the proof of guilt is not so
obviously weak or against the great weight and preponderance of the evidence as
to render the verdict clearly wrong or manifestly unjust.  We therefore hold
the evidence is factually sufficient to support the jury’s verdict, and
overrule Bell’s second issue.

*
* *

For
the foregoing reasons, we affirm the trial court’s judgment.

 








                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Yates, Frost,
and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
In an attempt to create another type of fundamental error, the Court of
Criminal Appeals in Blue v. State concluded in a plurality opinion that
a defendant has a fundamental right to not have a judge taint the presumption
of innocence.  Blue v. State, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000);
Powell, 252 S.W.3d at 745.  Nonetheless, even if Blue identifies
a fundamental error not previously recognized, the lack of a majority in Blue
means it is not binding precedent.  Powell, 252 S.W.3d at 745.





[2]
In Bell’s brief, he portrays the trial judge’s statement out of context because
the statement does not include the full admonishment from the trial judge. 
Courts have concluded that we view a trial judge’s comments in context, and an
appellant is not “free to dissect a trial record for words which may be
rendered ambiguous when taken from their context and then use them, once
removed from their context, to complain of error.”  Powell, 252 S.W.3d at
746 (citing Means v. State, 955 S.W.2d 686, 692 (Tex. App.—Amarillo
1997, pet. ref’d)).





[3]
Bell suggests in his brief that we should consider whether the chain of custody
of the evidence was proper.  But he specifically states that he is not
asserting lack of proper chain of custody, and he does not provide us with any
authority to review the argument.  See Tex. R. App. P. 38.1(i).  Therefore,
we will not address this argument.   





[4]
Forensic technician Stafford testified at trial that the bag of powdered
cocaine, which was found in the pockets of Bell’s shorts, contained
approximately 18.89 grams of cocaine.